RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0289p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____



UNITED STATES OF AMERICA,

              *Plaintiff-Appellee,*

    *v.*

No. 09-1136

AMAR SLIWO,

         *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-20519-002—Avern Cohn, District Judge.

Argued: August 6, 2010

Decided and Filed: September 8, 2010

Before: COLE and CLAY, Circuit Judges; KATZ, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Neil H. Fink, Birmingham, Michigan, for Appellant. Michael C. Leibson, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** S. Allen Early, III, LAW OFFICE OF S. ALLEN EARLY, Detroit, Michigan, for Appellant. Michael C. Leibson, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

    CLAY, J., delivered the opinion of the court, in which COLE, J., joined. KATZ, D. J. (pp. 13-18), delivered a separate dissenting opinion.

---

[*]The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

_____

**OPINION**

_____

CLAY, Circuit Judge.    Defendant Amar Sliwo appeals his conviction for conspiracy to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1), as well as aiding and abetting the possession with intent to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vii), and 18 U.S.C. § 2.    For the following reasons, Defendant's conviction is **REVERSED**.

**STATEMENT OF FACTS**

Defendant was indicted along with Ghassan Slewa, Bassil Yousif, Jamal Odeesh, and Ibrahim Al-Zayid on September 28, 2006.  Odeesh pleaded guilty, and Al-Zayid is currently a fugitive.  Defendant, Slewa, and Yousif were tried together in a two-day trial commencing June 9, 2010.  The jury convicted all three defendants on all charges against them.  All three made motions for acquittal on the basis of insufficient evidence that the district court considered after the jury rendered its verdict.  The district court granted Slewa's motion but denied both Defendant's and Youssif's motions.  Defendant appeals the denial of his motion for acquittal.

At trial, the following facts were presented to the jury.  On February 25, 2006, Sterling Heights police officers were surveilling Cafe Mocha.  They observed five or six men talking together.  Two of the men were Defendant and his brother, Slewa.  None of the other men were charged in this conspiracy.  Police officers observed the men with binoculars from across the street.  They could not hear what anyone in the group was saying.  At 7:00 p.m., a man who had been at Cafe Mocha parked a GMC van across the street.  At 10:30 a.m. the next day, February 26, 2006, Defendant arrived in a Dodge Ram pick-up truck with Slewa.  Slewa took the van, followed by Defendant, and drove to Hazel Park Race Track.  Slewa parked the van and went inside.  He returned to the

pick-up truck Defendant was driving, and the two men left together. The police did not follow Defendant and Slewa in the pick-up truck.

Shortly thereafter, Odeesh and Yousif left the track and drove the van. The two drove to the Red Apple party store in Highland Park and parked at the back delivery bay. The two men went inside. During this time, Sliwo was seen as a passenger in a Chevy Impala that was circling the market. Defendant observed an undercover police officer, Kenneth Pappas, behind the store. Defendant asked Pappas what he was doing. Pappas told Defendant he "was meeting up with a guy and we were about to do something." (R. 128 at 37). Defendant responded that Pappas "can't do that kind of stuff around my business, you have to leave." *Id.*

Odeesh and Yousif then returned in the van to the Hazel Park race track. After the two men entered the track, a police officer observed that the back of the van was empty. Subsequently, Odeesh and Yousif left the race track again. They went to a parking lot in Dearborn to meet a fourth man, Ibrahim Al-Zayid, who was waiting in a Pontiac Grand Prix. Odeesh left the van to speak with Al-Zayid.[1] During this meeting, Defendant was seen driving back and forth in a pick-up truck, arguably performing counter surveillance. All three vehicles (the Grand Prix, the van, and the pick-up truck) then proceeded to Liberty Truck Yard in Dearborn. The Grand Prix and the van entered the yard, while Defendant, in the pick-up truck, stayed outside. The Grand Prix and the van left the yard, and Defendant followed them. Police officers observed that the van was weighed down, and packages were visible through the window. The van, Grand Prix, and pick-up truck, in that order, proceeded to the highway. Defendant, driving the pick-up truck, ceased following the other vehicles, and the Grand Prix separated from the van shortly thereafter. Meanwhile, the police officers who observed the weighed down van requested that state officers stop the van. The van was stopped, and over 900 pounds of marijuana were discovered.

---

[1]The Pontiac Grand Prix was registered to a Maithman Mahni Al-Yasiri who, according to some testimony, was thought at one point to have been in the Pontiac. However, the government decided that the involved party was Al-Zayid and chose to indict him. Al-Zayid remains at large, and for purposes of this opinion, we assume that AL-Zayid was the name of the man in the Grand Prix.

## DISCUSSION

Defendant challenges the sufficiency of the evidence presented to support his conviction. "In reviewing the sufficiency of the evidence, the relevant inquiry is 'whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Wallace*, 597 F.3d 794, 800 (6th Cir. 2010) (quoting *United States v. Budd*, 496 F.3d 517, 530 (6th Cir. 2007)). The government "may meet its burden of proof [on a conspiracy charge] through circumstantial evidence." *United States v. Layne*, 192 F.3d 556, 567 (6th Cir. 1999).

"To sustain a conviction for conspiracy under 21 U.S.C. § 846, the government must have proved: (1) an agreement to violate drug laws, in this case 21 U.S.C. § 841; (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy." *United States v. Deitz*, 577 F.3d 672, 677 (6th Cir. 2009) (citation and quotation omitted). Defendant is effectively challenging the first prong, arguing that the government presented insufficient evidence to prove that he agreed to possess with intent to distribute marijuana.

In this case, the government presented evidence tying Defendant to his alleged co-conspirators who personally observed the loading of more than 900 pounds of marijuana into a van. The government, however, provided insufficient evidence that would allow a reasonable jury to find that Defendant had entered into an "an agreement to violate drug laws." The government produced evidence of Defendant arranging the transport of the van before it was loaded with drugs. The government also presented evidence from which a reasonable jury could find that Defendant was serving as a lookout on three separate occasions. The government failed to provide any evidence of any observed conversations between Defendant and his alleged co-conspirators.**[2]** This Court has repeatedly held that participation in a scheme whose ultimate purpose a

---

**[2]**Defendant was observed with his brother Slewa, but the district court determined that insufficient evidence was presented to implicate Slewa as a co-conspirator, and that decision was not appealed by the government.

defendant does not know is insufficient to sustain a conspiracy conviction under 21 U.S.C. § 846.  *See, e.g., United States v. Lopez-Medina*, 461 F.3d 724, 751 (6th Cir. 2006) (affirming conviction only upon finding sufficient evidence that defendant "was trafficking cocaine, as opposed to methamphetamine or any other substance"); *United States v. Morrison*, 220 F. App'x 389 (6th Cir. 2007); *United States v. Coppin*, 1 F. App'x 283 (6th Cir. 2001); *United States v. Wright*, 12 F.3d 215, 1993 WL 465164 (6th Cir. Nov. 10, 1993) (unpublished).

In *Morrison*, the Court reversed the defendant's convictions for his role in a drug trafficking offense.  In that case, two men were transporting drugs to Cleveland when they were stopped by police.  Police found 1.5 kilograms of cocaine in the gas tank of their car.  The couriers agreed to work with police and continued to deliver the drugs. Upon arriving in Cleveland, the man who hired the couriers to drive to Cleveland arranged for them to meet with the defendant, who on tape made a number of statements that indicated he knew the couriers were transporting something illegal.

The majority reversed the conviction in large part because insufficient evidence was presented that the defendant knew that the car contained drugs, rather than some other contraband.  The Court's holding focused on the fact that none of this evidence indicated that Morrison knew that cocaine was in the car.  "Even when considered in a light most favorable to the Government, the totality of this evidence does not prove beyond a reasonable doubt that Morrison had knowledge of hidden *drugs* (as opposed to any other contraband) in the Chrysler." *Morrison*, 220 F. App'x at 395. "Though the totality of the evidence . . . admittedly shows that Morrison had knowledge of *some* illegal activity, what it fails to show is that Morrison knew the purpose of all this activity centered around drugs – the 'essential object of the conspiracy' in which he was charged." *Id*. (quoting *United States v. Christian*, 786 F.2d 203, 211 (6th Cir. 1986)).

In this case, the government can point to no evidence that links Defendant to marijuana, "the essential object of the conspiracy." The district court rejected Defendant's sufficiency of the evidence challenge by explaining:

> And wherever the van went, Sliwo went – before, while, and after the marijuana was loaded, until just before the van was pulled over. Sliwo drove the pickup, accompanied the van from the race track to the Red Apple, accompanied the van back to the race track, accompanied the van to Ford Road in Dearborn, and then accompanied the van to the truck yard. At the Red Apple, Sliwo rode around in a car as a look-out. At the parking lot on Ford Road, Sliwo drove the pickup back and forth as a look-out. At the truck yard, Sliwo waited outside as a look-out while the van was loaded with the marijuana. When the van went into the truck yard, its cargo area was empty. When the van came out of the truck yard, it was observably loaded down with large packages. Once again, Sliwo followed.

*United States v. Sliwo*, No. 06-20519, 2008 WL 5244353 at *6 (E.D. Mich. Dec. 16, 2008). This evidence may be sufficient to show that Defendant had knowingly decided to work with his alleged co-conspirators, but it says nothing about whether Defendant knew that the ultimate purpose of the conspiracy was possession of marijuana. The district court's focus on the van is not persuasive because until the very last stop, the van was undeniably empty.

Furthermore, the evidence relied on by the district court clearly demonstrates that Defendant's primary purpose at most of these stops, even when viewed in the light most favorable to the government, was to serve as a lookout. He was a lookout at the party store, a lookout at the meeting on Ford Road, and a lookout when the marijuana was actually loaded into the van. No evidence was presented that Defendant ever set foot in the van or that he had any substantive discussions with Odeesh, Yousif, or Al-Zayid, the three people who eventually saw the marijuana loaded into the van. Defendant's actions otherwise consist solely of his transporting or accompanying the movement of the van and serving as a lookout. The only conversation Defendant is reported as having took place at the police's initial observation at Cafe Mocha. Based on that evidence, a juror could, at best, determine that Defendant arranged to receive an empty van (or perhaps a van that was to be loaded with some sort of unidentified contraband) that was later used to pick up the marijuana. No evidence was presented at any point that the van had any drugs in it until Odeesh, Yousif, and AL-Zayid left the truck yard.

The dissent appears to misunderstand our argument and ignores several settled requirements for proving a conspiracy. First, the dissent never adequately addresses the clear requirement that the government prove beyond a reasonable doubt that Defendant entered into an agreement to violate the drug laws. The dissent points to no evidence linking Defendant to the marijuana other than the fact that Defendant acted in a coordinated fashion with alleged co-conspirators who undoubtedly knew the purpose of the conspiracy. The dissent, therefore, would effectively eliminate the requirement that the government prove each element of the offense, allowing the government instead to prove only coordinated activity. Second, the dissent ignores "the Supreme Court's long-standing admonition that 'charges of conspiracy are not to be made out by piling inference upon inference.'" *United States v. Swafford*, 512 F.3d 833, 843 (6th Cir. 2008) (quoting *Direct Sales Co. v. United States*, 319 U.S. 703, 711 (1943)). Instead, the dissent assumes first that Defendant must have been coordinating his movements with his alleged co-conspirators. The dissent then takes the additional step of assuming, with no evidentiary support, that Defendant's alleged contacts with his co-conspirators must have alerted Defendant to the fact that the goal of the conspiracy was to obtain large quantities of marijuana. Third, the dissent's analysis creates a false dichotomy between the long-standing requirement of proving knowledge of the purpose of the illegal scheme, versus the dissent's incorrect assertion that the majority opinion would require direct evidence of that knowledge. Instead, we have undertaken a fact-intensive inquiry to look at the evidence presented at trial and have found that the evidence only revealed that Defendant served as a lookout and procured an empty van. Such a showing is insufficient to prove beyond a reasonable doubt that Defendant knew the purpose of the conspiracy was the acquisition of marijuana.[3]

---

[3]In *Lopez-Medina*, the Court undertook a detailed factual analysis to determine whether the defendant "was trafficking cocaine, as opposed to methamphetamine or any other substance." 461 F.3d at 751. The Court relied on various bits of circumstantial evidence to affirm the conviction, but the circumstantial evidence was much stronger than presented in this case. In *Lopez-Medina*, the Court noted the testimony of one witness who stated that the defendant told him he was dealing cocaine. Furthermore, other witnesses testified that wrappers found at the defendant's home were consistent with cocaine packaging. Finally, white powder in the defendant's garage was consistent with substances used to "cut" cocaine. *See id.* Curiously, the dissent in the instant case cites not a single case where the defendant challenges the evidence presented based on his knowledge of the ultimate objective of the conspiracy, and that challenge is rejected merely because sufficient evidence to show an agreement was presented. Instead, the dissent repeatedly cites various inapplicable platitudes about generally proving conspiracy from

Significantly, the evidence in this case demonstrates a weaker link between the defendant and the drugs than did the evidence in *Morrison*. In *Morrison*, the defendant had told the couriers, who knew drugs were in the car, that they had stolen his run; instructed the couriers on how to avoid being stopped by police; commented while driving one of the couriers in a car without drugs that they were now in a "clean" car; and was told by the organizer of the run not to go to work tomorrow because Morrison was going to be his "main mechanic," when the drugs were hidden in the car's gas tank. Despite this evidence, the Court found:

> Notably, however, the Government neglected to proffer any evidence as to *what* Morrison thought he was referring to when he uttered these statements. From this evidence, a reasonable jury could only conclude, at best, that Morrison's comments established that he knew *something* illegal was involved with the Chrysler. To conclude that these comments show, circumstantially or otherwise, Morrison's knowledge of hidden *drugs* – much less cocaine – is to engage in pure "conjecture and surmise," an exercise a rational trier of fact is not permitted to engage in.

*Morrison*, 220 F. App'x at 395.

We reached similar decisions in *United States v. Coppin*, 1 F. App'x 283 (6th Cir. 2001) and *United States v. Wright*, 12 F.3d 215, 1993 WL 465164 (6th Cir. Nov. 10, 1993) (unpublished). In *Coppin*, the defendant had traveled from Atlanta to Cincinnati with a person involved in a drug conspiracy. The defendant asserted that he agreed to serve as a translator for the alleged co-conspirator, but that the defendant's purpose for traveling to Cincinnati was to go shopping. The defendant was observed with a drug dealer at various places throughout Cincinnati and was present when a drug dealer made a payment to another dealer. The Court held that "Defendant's association with [a drug-dealer] and his presence in Cincinnati, however ill-advised, constitute evidence that should support the beginning of an investigation, not the beginning of a prison sentence." *Coppin*, 1 F. App'x at 292. Crucially, the Court held that the government "may have proved that there was a conspiracy, but the government must still present

---

factually distinct cases. When cases are directly on point, they support our position. *See, e.g., Morrison* 220 F. App'x at 393-98; *United States v. Wexler*, 838 F.2d 88, 91 (3d Cir. 1988)

sufficient evidence to show that this particular defendant knew of the objective of the conspiracy and agreed to join it." *Id.*

In *Wright*, the defendant was allegedly paid $1,000 to stay at a friend's home and protect the friend's marijuana. The government, however, "presented *no* evidence that [defendant] ever saw any money or marijuana . . . or that the conspiracy or any drug deals were ever discussed in [defendant's] presence." 1993 WL 465164 at *4.

Like these previous decisions, the government in this case failed to present sufficient evidence tying Defendant to the actual drugs found. The government emphasizes that Defendant was involved in "virtually all of the important activities leading up to the seizure of the marijuana." (Govt. Br. 10).[4] This evidence arguably shows that Defendant was engaged in a scheme with some sort of criminal purpose. The evidence, however, fails to demonstrate that Defendant knew that this conspiracy involved marijuana as opposed to stolen electronic equipment, counterfeit handbags, weapons, or any other illegal object that could be transported in a van. *See Morrison*, 220 F. App'x at 395 (finding that even considering the evidence in the light most favorable to the government, "the totality of this evidence does not prove beyond a reasonable doubt that [defendant] had knowledge of hidden *drugs* (as opposed to any other contraband)"); *see also*, *United States v. Wexler*, 838 F.2d 88, 91 (3d Cir. 1988) (finding insufficient evidence where defendant served as a lookout and spoke several times with person driving truck with illegal drugs because government did not produce "any evidence that [defendant] knew that a controlled substance was couched behind the doors of the . . . truck"). To fail to require a link to marijuana would be highly problematic where Defendant would be subject to wildly different levels of punishment if he joined a conspiracy that loaded a van full of stolen electronics equipment, counterfeit purses, or crack cocaine as opposed to marijuana. The government was required to prove Defendant engaged in a conspiracy to possess with intent to distribute

---

[4]We note, however, that what was presented as "important" was at the discretion of the government who presented the case. Needless to say, not every observation of the undercover officers observing Defendant and the others involved was necessarily presented to the jury.

marijuana, and evidence was required to be presented that would allow a reasonable jury to find that Defendant knew there was marijuana in the van.

Viewing the case under that lens, it becomes apparent that the government's evidence only shows that Defendant was participating in a scheme with his co-defendants and fails to demonstrate any link between Defendant and the marijuana. The best argument for the government is that evidence of close coordination is sufficient for a jury to infer knowledge when no evidence links Defendant to the drugs. In the instant case, however, the government has only showed Defendant transporting the empty van and serving as a lookout. Defendant was not a part of the meeting at the party store, and he did not participate in the discussion at the parking lot on Ford Road. The "'web of inference is too weak' on these facts to permit any rational trier of fact, absent sheer speculation, to find *beyond a reasonable doubt* that [Defendant] had knowledge of the hidden *drugs*." *Morrison*, 220 F. App'x at 396 (emphasis in original) (quoting *United States v. Wilson*, 160 F.3d 732, 737 (D.C. Cir. 1998).[5]

The government also references language from *Maryland v. Pringle*, 540 U.S. 366, 373 (2003), that approved an arrest of all three passengers in a car because the "quantity of drugs and cash in the car indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him." That case is inapposite. The relevant standard in *Pringle* was whether the officers had "probable cause," not whether the government had provided sufficient evidence to allow a jury to find against the defendants "beyond a reasonable doubt." In addition, the defendants were all found in the same car with drugs and money, whereas Defendant apparently served as a lookout. Furthermore, Defendant is not necessarily "innocent" in the sense that sufficient evidence was not presented that he furthered an illegal enterprise. The problem for the

---

[5]The dissent's position that we are crafting some rule that requires direct evidence in conspiracy cases is completely unfounded. If Defendant had entered the truck yard, his conviction may have been affirmed even though nobody directly saw him loading marijuana into the van. In addition, if Defendant had entered the van after the marijuana were loaded, even though the boxes were all closed, the conviction may have been affirmed. Here, however, all the government has shown is that Defendant probably was involved in some illegal enterprise, which fails the requirement that the government prove beyond a reasonable doubt that Defendant had "entered an agreement to violate drug laws." *Deitz*, 577 F.3d at 677.

government is that insufficient evidence was presented to prove beyond a reasonable doubt that Defendant committed the crime of conspiracy to possess with intent to distribute *marijuana*.

The standard of review in overturning a jury verdict is extremely deferential. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (holding that a court must uphold a jury verdict if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"). However, "charges of conspiracy are not to be made out by piling inference upon inference." *Direct Sales Co. v. United States*, 319 U.S. 703, 711 (1943). In this case, it is a step too far to find that Defendant knew that marijuana was in the van simply because he was involved in the run-up to the acquisition of the marijuana and served as a lookout when the drugs were actually loaded into the van – even though he was not present to see the marijuana being loaded. No evidence was presented that demonstrated Defendant's knowledge that the purpose of the scheme was the acquisition of marijuana. The government only showed that Defendant was involved in a scheme, and the evidence of his participating in transporting the empty van and serving as a lookout would not allow a rational jury to find beyond a reasonable doubt that Defendant conspired to possess with intent to distribute marijuana.

Defendant was also convicted of aiding and abetting the possession with intent to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vii) and 18 U.S.C. § 2. This conviction must also be reversed because 18 U.S.C. § 2 requires that "the defendant must have knowledge of the general scope and nature of the illegal [activity] and awareness of the general facts concerning the venture." *Morrison*, 220 F. App'x at 398 (quoting *United States v. Hill*, 55 F.3d 1197, 1201 (6th Cir. 1995)). For the same reason discussed above, the government failed to present sufficient evidence that Defendant knew he was involved in a scheme to procure marijuana. *See United States v. Craig*, 522 F.2d 29 (6th Cir. 1975) (finding insufficient evidence for an aiding and abetting conviction when the defendant had transported a closed box filled with drugs, and no evidence was presented to show that the defendant knew the contents of the box).

## **CONCLUSION**

For the foregoing reasons, Defendant's conviction is **REVERSED**.

———————————

**DISSENT**

———————————

KATZ, District Judge, dissenting.   Today's decision represents a curious departure from the long-settled rule that, in conspiracy cases, "[i]t is not necessary that the participation of the accused should be shown by direct evidence." *United States v. Manton*, 107 F.2d 834, 839 (2d Cir. 1939) (Sutherland, J.).  Indeed, the law has been that "[w]here the circumstances are such as to warrant a jury in finding that the conspirators had a unity of purpose or a common design and understanding . . . the conclusion that a conspiracy is established is justified." *American Tobacco Co. v. United States*, 382 U.S. 781, 810 (1946).  Because the circumstantial evidence in this case shows Sliwo knowingly participated in a drug conspiracy, going well beyond "mere association" with the other conspirators,  I would affirm his conviction.

The circumstantial evidence indicates Sliwo acted in concert with his fellow conspirators in pursuit of a common design.  Sliwo's observed role in the conspiracy was arguably more extensive than anyone else's: he was the only person in the vicinity of the van from the initial meeting at Café Moca the evening before, when the van was dropped off, up through the van's journey down I-94 the following afternoon, after it was loaded with marijuana.  To follow the van's movements over two days and across several disparate areas of Metro Detroit would have required Sliwo to be in sustained close contact with the other conspirators or to have had advance knowledge of their planned movements.  Moreover, Sliwo's actions in serving as a lookout at the Red Apple party store, the parking lot in Dearborn, and the truck yard where the delivery was finally consummated indicate that his contacts with the other conspirators were not merely incidental, but related to the conspiracy's ultimate objective.

When viewed in its totality, the evidence thus indicates a high degree of coordination between Sliwo and the other conspirators in pursuit of a specific objective: picking up a large quantity of marijuana.  The contacts between Sliwo, the van, the other conspirators, and the drugs were too extensive to have been mere coincidence.

Certainly, it was reasonable for the jury to infer from the evidence that Sliwo's actions were in pursuit of a common scheme, the purpose of which was known to him.

Under traditional principles of conspiracy law, this evidence is plainly sufficient. "The common design is the essence of the conspiracy. This may be shown by proof of concert of action in the commission of an unlawful act from which a plan, common design or an agreement can be inferred." *United States v. Zuideveld*, 316 F.2d 873, 878 (7th Cir. 1963); see also *United States v. Carr*, 5 F.3d 986, 990 (6th Cir. 1993) ("It is not even necessary for a coconspirator to know about the acts of another coconspirator in order to be held responsible for those acts. Such evidence can be inferred from the interdependence of the enterprise.") (internal citations omitted). It has been "long recognized that purely circumstantial evidence may be sufficient to sustain a conspiracy conviction." *United States v. Pelfrey*, 822 F.2d 628, 632 (6th Cir. 1987). "Indeed, often if not generally, direct proof of a criminal conspiracy is not available and it will be disclosed only by a development and collocation of circumstances." *Manton*, 107 F.2d at 839. Undoubtedly, the instruction given by the trial court in this case correctly stated the law: "[a] defendant's knowledge can be proved indirectly by facts and circumstances which lead to a conclusion that he knew the conspiracy's main purpose." *United States v. Sliwo*, No. 06-20519, 2008 WL 5244353 at *4 (E.D. Mich. Dec. 16, 2008).

The majority, however, finds the evidence insufficient, because it does not exclude the possibility that Sliwo believed he was joining a conspiracy to receive, say, "stolen electronic equipment, counterfeit handbags, weapons, or any other illegal object that could be transported in a van." Maj. Op. at 9. While these are indeed inferences a finder of fact might have drawn from the evidence, they are exceedingly weak ones. Based on the evidence presented, it is difficult to imagine that Sliwo's actions during the relevant period were taken independent of the other conspirators, were not taken in furtherance of the conspiracy, or were taken based on a different understanding of the conspiracy's objective than that of his co-conspirators.

Indeed, as the majority concedes, "[t]he government . . . presented evidence from which a reasonable jury could find that Defendant was serving as a lookout on three

separate occasions," including at the truck yard where the marijuana delivery took place. Maj. Op. at 4. Certainly, serving as a lookout counts as "participation in the conspiracy" for purposes of 21 U.S.C. § 846. *United States v. Layne*, 192 F.3d 556, 567-568 (6th Cir.1999). Apparently, however, it would be "a step too far" for a reasonable jury to infer that Sliwo was knowingly participating in the same conspiracy as the men whose van he had been following over the course of two days. Maj. Op. at 11. I find this conclusion difficult to understand.[1]

Instead, the stronger inference, given the extent of Sliwo's acknowledged participation in the drug conspiracy in this case, is that Sliwo was not merely an unknowing associate of the main conspirators, but that he understood all the material elements of the conspiracy. It is only by viewing the evidence in artificial isolation, ignoring the systematic nature of the contact and coordination between Sliwo and the other conspirators up through and beyond the marijuana pick up, that one could conclude it shows nothing more than "that Defendant arranged to receive an empty van (or perhaps a van that was to be loaded with some sort of unidentified contraband) that was later used to pick up the marijuana." Maj. Op. at 6.

I therefore do not believe that the majority's reasoning can be squared with basic principles governing sufficiency-of-the-evidence review in criminal cases: that we "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict," *United States v. Maliszewski*, 161 F.3d 992, 1006 (6th Cir. 1998); that we will uphold the jury's verdict if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); and that in making this showing, "[t]he government may meet its burden through circumstantial evidence alone, and such evidence need not exclude every possible hypothesis except that of guilt." *United States v. Jackson*, 55 F.3d 1219, 1225

---

[1]The majority's conclusion is no more explicable if we assume, as the majority does, that sufficient evidence would have existed "had [Sliwo] entered the truck yard" or "entered the van after the marijuana [was] loaded." Maj. Op. at 10 n. 5. While such evidence would have shown that Sliwo was more closely proximate to the drugs physically, it would not have suggested any more strongly than the evidence that actually was presented in this case that Sliwo knew of the conspiracy's ultimate aim.

(6th Cir. 1995). By contrast, the majority views the government's case with unyielding skepticism, declines to draw reasonable inferences from the circumstantial evidence, and demands additional proof so as to rule out the hypothesis that Sliwo did not know of the conspiracy's objective.

Indeed, if the overwhelming circumstantial evidence in this case be deemed to show nothing more than "mere association under suspicious circumstances," it is difficult to imagine any case where the government will be able to meet its burden of demonstrating a defendant's *specific* knowledge of the conspiracy's illegal aim in the absence of direct evidence. Under the majority's approach, where the evidence does not directly link the defendant to the specific contraband at issue, residual doubt as to the defendant's knowledge will always preclude a conviction, no matter how strong the evidence of his involvement in the conspiracy might otherwise be.

The majority thus would effectively require the government to present direct evidence showing the defendant's knowledge of the conspiracy's specific objective in order to sustain a conviction. See Maj. Op. at 11 (noting that Sliwo "was not present to see the marijuana being loaded" in refusing to infer that "[he] knew marijuana was in the van"); Maj. Op at 4 (noting that "[t]he government failed to provide any evidence of any observed conversations between [Sliwo] and his alleged co-conspirators."). Such a requirement runs contrary to longstanding circuit precedent. See, *e.g.*, *Pelfrey*, 822 F.2d at 632 ("Inferential proof may be controlling where the offense charged is so inherently secretive in nature as to permit the marshalling of only circumstantial evidence. This is the norm in drug conspiracy prosecutions . . . ."); *United States v. Christian*, 786 F.3d 203, 211 (6th Cir. 1986) ("A [conspiracy] defendant's guilty knowledge . . . may be inferred from surrounding circumstances."); *United States v. Chambers*, 382 F.2d 910, 913 (6th Cir. 1967) ("Proof of the requisite knowledge and intent on the part of conspirators need not be made by direct evidence. Indeed, it is a rare case in which such evidence may be found.").[2] While the majority relies extensively on unpublished

_____

[2]*United States v. Lopez-Medina*, 461 F.3d 724 (6th Cir. 2006), relied upon by the majority, is not to the contrary. In that case, in affirming Medina's conspiracy conviction, the Court noted that "[s]ufficient evidence also existed to establish that Medina was trafficking cocaine, as opposed to

opinions issued by various panels in this circuit suggesting a contrary rule, see Maj. Op. at 5-9 (discussing *United States v. Morrison*, 220 F.App'x 389 (6th Cir. Feb. 22, 2007), *United States v. Coppin*, 1 Fed. App'x 283 (6th Cir. Jan. 5, 2001), and *United States v. Wright*, 12 F.3d 215, 1993 WL 465164 (6th Cir. Nov. 10, 1993) (per curiam)), these opinions lack precedential effect, see *Rabblers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 655 (2009) (citing 6th Cir. R. 206(c)), and are inconsistent with the precedential rulings on point.[3]

The doubting Thomas approach to conspiracy liability adopted by the majority today carries with it very real dangers. "Secrecy and concealment are essential features of successful conspiracy. The more completely they are achieved, the more successful the crime." *Blumenthal v. United States*, 332 U.S. 539, 557 (1947). Therefore, "the law rightly gives room for allowing the conviction of those discovered upon showing sufficiently the essential nature of the plan and their connections with it, without requiring evidence of knowledge of all its details or of the participation of others." *Id*. The dangers of a contrary rule are obvious. "[T]he difficulties, not only of discovery, but of certainty in proof and of correlating proof with pleading would become

---

methamphetamine or any other substance." *Id*. at 751. But the evidence the *Lopez-Medina* Court relied upon in reaching that conclusion was itself largely circumstantial. See *id*. (noting a co-defendant's "criminal history involving cocaine distribution," as well as testimony "that the wrappers found in Medina's home were most consistent with the size and shape of cocaine packaging," that "the white powder found in Medina's garage was consistent with substances that . . . were frequently used to 'cut' cocaine," and that "some of the numbers found in the drug ledgers corresponded to the wholesale price of cocaine.").

[3]The Third Circuit appears to have adopted a "specific evidence" requirement in conspiracy cases similar to that adopted by today's majority. See, *e.g.*, *United States v. Wexler*, 838 F.2d 88, 92 (3d Cir. 1988) (holding evidence of defendant's knowledge of drug conspiracy's purpose insufficient where, although the evidence supported an inference that the defendant knew "some form of contraband was involved" in the conspiracy, "[t]he evidence was just as consistent, for example, with a conspiracy to transport stolen goods, an entirely different crime."). The Third Circuit's experience in applying *Wexler* does not inspire confidence in the majority's assurance that it is not creating a rule requiring direct evidence to sustain conspiracy convictions. See, *e.g.*, *United States v. Cartwright*, 359 F.3d 281, 290 (3d Cir. 2004) (refusing to uphold conspiracy conviction "in the absence of any . . . direct evidence indicating [the defendant's] knowledge . . . .").

Application of *Wexler* in the Third Circuit has led to other peculiar results. For example, it has led Third Circuit panels to undertake detailed, thirteenth juror-type analyses of the sufficiency of the evidence at trial, in spite of the deferential standard of review that ordinarily applies in such cases. Compare *United States v. Idowu*, 157 F.3d 265, 268-270 (3d Cir. 1998) with *id*. at 271 (Stapleton, J., dissenting). The Third Circuit also apparently requires greater proof of knowledge where a conspiracy defendant performs a "secondary function" in a drug conspiracy, as opposed to a "primary function." See *United States v. Edge*, 261 Fed. Appx. 379, 384 n. 3 (3d Cir. Jan. 14, 2008) (suggesting that the government must meet a higher evidentiary threshold in cases where the defendant played a "secondary function" such as acting as a lookout or serving as a driver).

insuperable, and conspirators would go free by their very ingenuity." *Id.*  One can only hope that such consequences do not attend today's decision.

I respectfully dissent.