NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0805n.06

No. 09-1863

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Dec 02, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| CHARLES D. LONG, | ) | O P I N I O N |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE:    SILER, McKEAGUE and STRANCH, Circuit Judges.

**McKEAGUE, Circuit Judge.** Defendant Charles D. Long was found guilty in a jury trial of unlawfully discharging industrial wastewater into the Detroit sewer system and of conspiring to commit this violation. He was sentenced to two twenty-four-month prison terms, to run concurrently. In this appeal, defendant challenges his conviction on eight grounds. We find no error and therefore affirm.

I

During the period 1997 to 2005, defendant Charles Long worked at an industrial waste treatment facility in Dearborn, near Detroit. The facility was owned and operated by Rich Coast, Inc., until 2002, when it was purchased by Comprehensive Environmental Solutions, Inc. ("CESI"). Long held various positions during his tenure, serving as Plant Manager until August 2001 and as Oil Reclamation and Recovery Manager thereafter.

Industrial waste "pretreatment" operations at the CESI facility in Dearborn were subject to regulations promulgated by the Environmental Protection Agency ("EPA") under the Clean Water Act, 33 U.S.C. §§ 1251-1387.  The facility's operations were also required to meet EPA-approved permitting requirements imposed by the Detroit Water and Sewerage Department.  These regulations and requirements generally prohibited "bypass," or the diversion of wastewater around any portion of the approved pretreatment program for discharge directly into the municipal sewer system.  The Clean Water Act prescribes criminal sanctions for knowing violations of such regulations and requirements.  33 U.S.C. § 1319(c)(2).

In January 2007, the grand jury in the Eastern District of Michigan returned an indictment charging defendant Long, among other CESI employees, with knowingly violating EPA-approved pretreatment requirements from January to June 2002 (Count 2); and with conspiring to violate the law in relation to the unlawful discharges from 2001 to July 2002 (Count 1).  A jury trial was conducted in October 2008.  Evidence admitted at trial showed that defendant Long and others had regularly participated in unlawful discharges of untreated waste.  The jury found Long guilty of both charges against him.  On April 7, 2009, the district court sentenced Long to two concurrent prison terms of twenty-four months.[1]  On appeal, Long challenges his conviction on several grounds.

---

[1]U.S. Bureau of Prisons records show that Long was released from prison on April 5, 2011.

**II**

**A. Jury Instructions**

In his first claim of error, Long challenges the adequacy of the instructions given to the jury on the conspiracy charge. Long concedes that because he raised no such objection below, the claim is reviewed only for plain error. We may grant relief for "plain error" only if Long shows (1) error (2) that was obvious or clear, (3) that affected his substantial rights, and (4) that affected the fairness, integrity, or public reputation of the trial. *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc). Such relief is reserved for "exceptional circumstances," that is, where the error was so plain that the trial court would be deemed derelict in having countenanced it. *Id.*

Long correctly contends that a jury cannot find a defendant guilty without having unanimously found every element of the charged offense proven beyond a reasonable doubt. *Davis v. Mitchell*, 318 F.3d 682, 688 (6th Cir. 2003). With this requirement in mind, Long focuses on the following instruction on the conspiracy charge:

> Now with regard to the first element, a criminal agreement. The Government must prove that two or more persons conspired or agreed to cooperate with each other to commit one or more of the following crimes:
>
> (A), knowingly violating U.S. EPA approved pretreatment requirements or
>
> (B), knowingly making false statements in documents and rendering inaccurate monitoring devices and methods or
>
> (C), knowing and willfully making false statements to local and Federal officials responsible for enforcing Federal environmental laws and to conceal material facts or
>
> (D), knowingly obstructing justice.

R. 147, Trial Tr. vol. 11, pp. 15-16.  Because this instruction identifies each of four different crimes, in the disjunctive,  as the agreed-to object of the charged conspiracy, Long contends it permitted the jurors to find him guilty of a conspiracy without necessarily finding, unanimously, that he conspired to commit any one of the identified offenses.

Long's argument is based on one sentence of the instructions, read in isolation.  However, when jury instructions are claimed to be erroneous, we review the instructions as a whole.  "A judgment may be reversed based upon an improper jury instruction only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *United States v. Williams*, 612 F.3d 500, 506 (6th Cir. 2010) (quoting *United States v. Kuehne*, 547 F.3d 667, 679 (6th Cir. 2008)).  When the subject instruction is read in context, its potential to mislead is minimized.  In fact, the concern identified by Long is specifically addressed in each of the following instructions:

> The Indictment accuses the Defendants of conspiring to commit several Federal crimes.  The Government does not have to prove that the Defendants agreed to commit all these crimes, but *the Government must prove an agreement to commit at least one of them for you to return a guilty verdict on the Conspiracy charge.*

> If you are convinced that there was a criminal agreement, then you must decide whether the Government has proved that the Defendants knowingly and voluntarily joined *that agreement.  You must consider each Defendant separately in this regard.*

> * * * *

> The Indictment charges a conspiracy to commit four separate crimes or offenses.  It is not necessary for the Government to prove a conspiracy to commit all of those offenses.  It would be sufficient if the Government proves beyond a reasonable doubt that a conspiracy to commit one - - if the Government proves beyond a reasonable doubt a conspiracy to commit one of those offenses; *but in that event, in order to return a verdict of guilty, you must unanimously agree upon which*

> *of the four offenses was the subject of the conspiracy and if you cannot agree in that*
> *manner, you must find the Defendant not guilty.*

R. 147, Trial Tr. vol. 11, pp. 17, 19 (emphasis added).

Reading the instructions as a whole, we find no error—much less plain error.

**B. Sufficiency of the Evidence**

**1. *Conspiracy***

Long also contends the government failed to prove that he joined an agreement to commit any of the four conspiracy offenses charged in Count 1of the indictment.  He  acknowledges that the government's proofs may have established several of the elements of the charged conspiracies, but maintains the evidence failed to show the existence of a specific agreement to violate the law and that he knowingly joined such an agreement.

Long's sufficiency of the evidence challenge poses a heavy burden.  The jury's verdict can be set aside only if we find, after viewing the record as a whole in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *United States v. Martinez*, 588 F.3d 301, 314 (6th Cir. 2009). Circumstantial evidence alone can sustain a guilty verdict, even though it fails to remove every reasonable hypothesis except that of guilt. *Id.*  In evaluating the evidence, "we do not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury." *United States v. Conatser*, 514 F.3d 508, 518 (6th Cir. 2008) (quoting *United States v. Wright*, 16 F.3d 1429, 1440 (6th Cir. 1994)).

To prove a conspiracy, the government had to establish: "(1) the existence of an agreement to violate the law; (2) knowledge and intent to join the conspiracy; and (3) an overt act constituting actual participation in the conspiracy." *United State v. Blackwell*, 459 F.3d 739, 760 (6th Cir. 2006). A conspiracy can be established without proof of a formal agreement; a tacit or mutual understanding among the parties will suffice. *Conatser*, 514 F.3d at 518. And just as the existence of a conspiracy "may be inferred from circumstantial evidence, a defendant's knowledge of and participation in a conspiracy also may be inferred from his conduct and established by circumstantial evidence." *Id.* "Once a conspiracy is established beyond a reasonable doubt, a particular defendant's connection to the conspiracy 'need only be slight.'" *Id.* (citation omitted).

Long cites two Sixth Circuit decisions as illustrative of the shortcomings in the government's proofs against him. The first is *United States v. Sliwo*, 620 F.3d 630 (6th Cir. 2010), where a conspiracy conviction was overturned for lack of sufficient evidence. Although Sliwo was clearly shown to have participated in a scheme with his co-defendants by arranging for a transport van and serving as lookout, *evidence* of his knowledge of the scheme's drug-transportation purpose was lacking. The court emphasized that "charges of conspiracy are not to be made out by piling inference upon inference." *Id.* at 635, 638 (quoting *Direct Sales Co. v. United States*, 319 U.S. 703, 711 (1943)). Similarly, the second decision, *United States v. Coppin*, 1 F. App'x 283 (6th Cir. 2001), stands for the proposition that evidence of presence and association with co-conspirators alone does not establish that a defendant had knowledge of and joined in the purpose of the conspiracy.

Here, in contrast with *Sliwo* and *Coppin*, there is substantial evidence not only of Long's active and knowing participation (along with others) in the unlawful discharges of untreated (and

less-than-fully treated) waste, but also of his continuing participation after he had conversations with other co-defendant CESI employees about the unlawfulness of their conduct. Although the record is devoid of any formal agreement to discharge waste in violation of permitting requirements, there is ample evidence in the record from which the jury could reasonably conclude that there was a tacit or mutual understanding among the co-conspirators and that Long acted in concert with others to accomplish the scheme's unlawful purpose.

### 2. *Clean Water Act Violation*

Long also challenges the sufficiency of the evidence to support the jury's verdict on the Count 2 charge that he knowingly violated the Clean Water Act pretreatment requirements during the period January 25, 2002 to June 2002. The jury was correctly instructed that to find defendant guilty of this offense, the jury had to be convinced that the government proved the following elements beyond a reasonable doubt:

> (A), On or about the dates charged in the Indictment, the Defendant violated the requirement of a pretreatment program, that is, the bypass prohibition of the pretreatment program and
>
> (B), the pretreatment program was a program administered by a POTW ("publicly owned treatment works" ) that has been approved by the U.S. EPA or by a state, and
>
> (C), the Defendant acted knowingly.

R. 147, Trial Tr. vol. 11, p. 20. Long contends the government's proofs failed to establish that he participated in unlawful discharges during the charged period and that he acted "knowingly."

It is true that some of the evidence of Long's participation in the unlawful discharges failed to identify a specific time frame. However, Long's argument ignores the testimony of Special Agent

Carol Paszkiewicz. Paszkiewicz testified that Long, during a December 4, 2006 interview, admitted participating in bypass discharges from three different sources in the CESI facilities during the charged period. R. 145, Trial Tr. vol. 9, pp. 95-97. Taken as a whole and viewed in the light most favorable to the prosecution, the proofs are clearly sufficient to support the jury's finding that Long participated in unlawful discharges on or about January 25, 2002 until about June 2002.

Also unavailing is Long's argument that the government did not prove that he acted "knowingly." Long points to evidence that he was concerned about and reticent to engage in prohibited discharges. This demonstrates, he contends, that he did not intend to violate the law. Yet, the fact that Long appreciated the wrongfulness of his conduct and nonetheless persisted in it—however reluctantly—substantiates the jury's conclusion that he acted "knowingly," and not because of mistake or accident or some other innocent reason.

### C. Rule 404(b) Evidence

Long contends the district court abused its discretion by admitting Rule 404(b) "other acts" evidence without a proper purpose and that he was unfairly prejudiced. Rule 404(b) of the Federal Rules of Evidence provides in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Specifically, Long argues that the court improperly admitted evidence of prohibited discharges at the CESI facility prior to the time period charged in the indictment. He contends the evidence was introduced only to show that the alleged co-conspirators were bad persons who continued to act

during the charged period in conformity with their past pattern of misconduct. Because no such objection was made in the trial court, we review for plain error only.

The government contends the evidence complained of was not excludable under Rule 404(b) for at least two reasons. First, Rule 404(b) is said not to apply to the "other acts" evidence at issue because it was not *extrinsic* to the charged offenses. Indeed, "Rule 404(b) prohibits the use of extrinsic evidence of a person's 'other crimes, wrongs or acts' to show that a person acted in conformity with them." *United States v. Holden*, 557 F.3d 698, 704 (6th Cir. 2009). Rule 404(b) is not implicated when the other crimes or wrongs evidence is "intrinsic," that is, "part of a continuing pattern of illegal activity." *United States v. Gonzalez*, 501 F.3d 630, 639 (6th Cir. 2007) (quoting *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995)). Intrinsic evidence has been defined so broadly as to include evidence that represents a "prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of the witness's testimony, or completes the story of the charged offense." *Id.* (quoting *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) (emphasis deleted)). The government contends the evidence Long now complains of is properly considered background or intrinsic evidence.

Second, the government contends that even if any of the evidence of prior prohibited discharges is not deemed to be intrinsic and is therefore subject to scrutiny under Rule 404(b), it was nonetheless admissible to show defendants' knowledge of the ongoing bypass discharge problem, and to dispel any notion that discharges during the charged period were the product of mistake or accident.

We agree with both of the government's positions. Long has failed to show any plain error or abuse of discretion in the district court's admission of the challenged evidence.

### D. Constitutionality of Clean Water Act

Long contends the provision of the Clean Water Act under which he was convicted, 33 U.S.C. § 1319(c)(2)(A), is unconstitutionally vague because it prescribes criminal penalties for knowingly violating any requirement imposed in a pretreatment program without defining "knowingly" or "any requirement imposed in a pretreatment program." Long did not raise this objection below and offers no case law authority supporting the challenge on appeal.

Reviewing for plain error, we find none. Even if we were to find that § 1319(c)(2)(A) fails to provide a person of ordinary intelligence with fair notice of what is prohibited (which we do not), we could hardly hold that such a defect is "plain" where the error has not been made clear under current law. *See United States v. Olano*, 507 U.S. 725, 734 (1993) (holding that court of appeals cannot correct error as "plain error" unless error is clear under current law).

### E. Prosecutorial Misconduct

Next, Long contends that counsel for the government engaged in impermissible misconduct by making several improper remarks during closing arguments. He did not object in the district court and acknowledges that this claim, too, is subject to review only for plain error.

The parties agree that the governing standard is set forth in *United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001). Improper statements by the prosecuting attorney warrant reversal only if they are found to be "flagrant," considering "(1) whether the statements tended to mislead the jury or prejudice the defendant; (2) whether the statements were isolated or among a series of

improper statements; (3) whether the statements were deliberately or accidentally before the jury; and (4) the total strength of the evidence against the accused." *Id.* (quoting *United States v. Tocco*, 200 F.3d 401, 420 (6th Cir. 2000)).

Duly considering the statements here objected to by Long under this standard, we find that the statements, if improper at all, were of negligible significance. They were not flagrant, did not have a tendency to mislead the jury, and had only slight tendency to prejudice defendant Long. Considering the strength of the evidence against Long, we cannot find that the Assistant U.S. Attorney's occasional questionable characterization of the evidence or hyperbolic argument was "so pronounced and persistent that it permeated the entire atmosphere of the trial" and rendered it fundamentally unfair. *See id.* Certainly, there was no plain error.

### F. Improper Use of Interpreter

One of the government's trial witnesses, Houxiang Liu, testified with the aid of an interpreter. Liu had been employed as a chemical engineer inspector in the Industrial Waste Control Division of the Detroit Water and Sewerage Department since 1997. During his testimony, it became apparent that although he understood and spoke English, his answers were sometimes difficult to understand. Accordingly, the district court directed that Liu's testimony be given in his primary language, Mandarin Chinese, and translated into English by a sworn interpreter. The court allowed Liu to be examined in English and respond in Chinese, so that only his answers were translated into English. No objection to this procedure was stated at trial. On appeal, however, Long contends "there can be no confidence that Mr. Liu understood the questions so as to be able to answer them correctly." Yet, Long has not identified any portion of Liu's testimony, *see* R. 143,

Trial Tr. vol. 7, pp. 1-59, that demonstrates difficulty or confusion. He has not identified any way in which Liu's testimony was so compromised as to result in prejudice to him or his defense in the eyes of the jury. We find no error.

### G. Cumulative Effect of Errors

Finally, Long cites *United States v. Robinson*, 357 F. App'x 677, 688 (6th Cir. 2009), and contends that even if none of the above claimed errors standing alone warrants relief, cumulatively, they produced a fundamentally unfair trial. "Yet, this 'cumulative error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors.'" *Id.* (quoting *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004)). Having duly considered all of Long's appellate claims and found no cognizable error, we necessarily find no cumulative effect that warrants relief.

### III

Accordingly, defendant Long's conviction is **AFFIRMED.**