**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0478n.06

**Nos. 10-6269, 10-6271, 10-6272**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | *May 21, 2013* |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | |
| ELPIDIO JOSE CABRERA-BAILON | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| Defendant-Appellant. | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |

Before: BOGGS, GIBBONS, and COOK, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** In June 2009, a federal grand jury issued an indictment charging multiple defendants with drug offenses and offenses related to the operation of an auto theft ring and chop shop. Count 24 of the indictment charged Elpidio Jose Cabrera-Bailon ("Cabrera") and twelve others with conspiracy to distribute and possess with intent to distribute five hundred or more grams of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B). In March 2010, a jury convicted Cabrera on Count 24, the only count in which he was charged, following a four-day trial. Cabrera filed a motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, which the district court denied. On appeal, he argues that the evidence presented at trial was insufficient to establish his guilt.[1] We affirm Cabrera's conviction.

---

[1]Cabrera also appealed two unrelated convictions for illegal re-entry (No. 10-6269) and using a false attestation on employment eligibility verification (No. 10-6271). We consolidated these cases on appeal. However, Cabrera raises no issues related to his convictions for illegal re-entry and false attestation, and, therefore, we need not address them.

**I.**

On March 23, 2010, Cabrera and his co-defendant Calvin Ivey went to trial on Count 24. The other defendants previously had reached plea agreements with the government, and several of them testified against Cabrera and Ivey.

James Sisk, who had worked with Cabrera at Fish Farms tomato farm, testified that from May 2008 to January 2009, he purchased cocaine from Cabrera on behalf of Thomas Grant Williams. Sisk testified that Williams would give him money, Sisk would contact Cabrera, and Cabrera would give him cocaine for Williams. Sisk would receive cash or cocaine in exchange for acting as the middleman. Sisk said that during the summer of 2008, he bought cocaine from Cabrera on a weekly basis. Sisk described the cocaine that Cabrera sold as "some of the highest quality cocaine" in town. He stated that he met Cabrera at different locations to purchase cocaine, including the fields at Fish Farms, Cabrera's home, Wal-Mart, and a market that he referred to as the "Mexican store." Once, Sisk went to Cabrera's home to buy cocaine and saw a football-sized quantity of cocaine in a bucket in Cabrera's garage. Sisk testified that sometimes he would give Cabrera money for drugs and then arrange to pick up the drugs later.

Williams testified that he began selling cocaine in 2000 and that he started looking for a new supplier in 2006 or 2007 when the quality of the cocaine that he was buying started to decline. Williams said that he bought cocaine from Cabrera on a weekly basis, using Sisk as a go-between in order to protect himself. He diluted the cocaine he bought from Cabrera and sold it to other people, including Ivey and other co-conspirators named in the indictment. Williams recalled seeing Cabrera in person a few times, including once when he went with Sisk to Fish Farms to pick up

cocaine from Cabrera. Williams testified that he offered to sell Cabrera trucks in exchange for cash and cocaine on two occasions.

Melanie Aldridge, an FBI intelligence analyst who investigated the drug and auto theft conspiracies, testified that telephone records showed that from July 2008 to May 2009, 290 calls were placed between Sisk and Cabrera's phone numbers. The jury listened to recordings of intercepted telephone conversations between Sisk and Williams. Sisk and Williams explained the coded language that they used during the calls, testifying that when they said "boxes of tomatoes," they were referring to ounces of cocaine. The jury also heard recordings of conversations between Williams and his customers in which Williams alluded to obtaining cocaine from Cabrera. Williams explained the code words he used during several conversations in which he talked about Cabrera going to Mexico to get more cocaine.

Sisk testified regarding a specific incident on January 27, 2009, when he met Cabrera at a Wal-Mart store for the dual purposes of buying cocaine for Williams and inquiring about whether Cabrera wanted to buy a truck from Williams. The jury listened to recordings of phone calls between Sisk and Williams that took place while Sisk was in the Wal-Mart parking lot. Sisk identified Cabrera's voice in the background of one of the calls. Sisk explained that when he said "mules" during the conversation, he was referring to quantities of cocaine.

Law enforcement officers who were conducting surveillance on the day of the Wal-Mart meeting also testified. FBI Special Agent Kevin Keithley testified that he observed a red truck parked next to a black truck and that the occupants talked for almost twenty minutes. Keithley said

that he recognized the driver of the red truck as "James Civic"[2] and the driver of the black truck as a Hispanic man. He discovered that the black truck was registered to Cabrera. Keithley testified that after the meeting ended, he followed the black truck, which stopped at a gas station and a grocery store before continuing onto Interstate 40 in the direction of Fish Farms. Sergeant Armando Fontes of the Cocke County Sheriff's Department testified that he stopped the black truck at the request of the officers involved in the surveillance. He said that he recognized the driver as Cabrera, who previously had translated for Fontes when Fontes responded to calls at Fish Farms. Captain Benny Shelton, who was also with the Sheriff's Department, testified that he assisted with the traffic stop and that he recognized Cabrera, whom he had met previously at Fish Farms. Sergeant David Finchum, an officer in the K-9 division of the Sevierville Police Department, testified that he used his dog to search Cabrera's truck for drugs but did not find drugs in the truck or on the person of the passenger traveling with Cabrera. However, Finchum did find "a large sum of money" on the passenger.

Finally, Mark Evans, who was not named in the indictment, testified that he purchased cocaine from Cabrera at the "Mexican store" and at a market called Brock's. He told the jury that he bought quarter ounces of cocaine from Cabrera eight to ten times, usually on Fridays after work. He stated that the largest quantity of cocaine that he saw in Cabrera's possession was "a pretty good size sack," roughly the size of a box of tissues. He testified that the last time he bought cocaine from Cabrera was in August 2008.

---

[2]Presumably Keithley was referring to Sisk, although prosecutors do not appear to have clarified this at trial.

At the close of the government's case, Cabrera and Ivey's attorneys made motions for judgment of acquittal, which the district court denied. The defense then presented several witnesses, including Cabrera. Cabrera admitted to using cocaine with Sisk but denied selling drugs. He claimed that he spoke with Sisk by phone every day for work purposes. Cabrera testified that on January 27, 2009, he was at Wal-Mart with his nephew cashing checks when Sisk called him and asked where he was. Sisk came to Wal-Mart and had a conversation with Cabrera in the parking lot. Cabrera said that they talked about work and a truck that was for sale but that they did not exchange money or drugs. Cabrera stated that he met Williams three times and that each meeting involved a truck that was for sale. He testified that he never tried to exchange cocaine for a truck. Cabrera also testified that he had never seen Evans prior to encountering him in jail. Finally, Cabrera admitted that he traveled to Mexico in October 2008 but said that he went for the purpose of visiting his son and his girlfriend.

Christine Fish, a part owner of Fish Farms, testified regarding Cabrera's job responsibilities, which sometimes required him to work seven days a week. Crystal Fish, an employee at Fish Farms, testified that she often called Cabrera's cell phone for work-related purposes and that Sisk also used his cell phone at work. She described Cabrera as "one of the best" workers. Armando Cabrera Milan, Cabrera's brother, testified that he went with Cabrera to Mexico in October 2008 to see Cabrera's son and girlfriend. Marco Cabrera, Cabrera's nephew, testified that he went with Cabrera to Wal-Mart on January 27, 2009, to cash checks and to see about a truck that Williams was selling. He said that Cabrera talked with Sisk in the parking lot, but he did not see Cabrera and Sisk make

physical contact or exchange anything. He testified that he had several thousand dollars in cash with him because he had just cashed a check and Cabrera also had loaned him some money.

On March 26, 2010, the jury found Cabrera and Ivey guilty of conspiracy. On April 2, 2010, Cabrera filed a motion for a judgment of acquittal. He argued primarily that the government never obtained any cocaine from him and that the testimony of Sisk, Williams, and Evans was inconsistent and unreliable. The district court denied Cabrera's motion on September 15, 2010, finding that Sisk's testimony, which was corroborated by intercepted telephone calls and law enforcement surveillance of the Wal-Mart meeting, was sufficient to establish the essential elements of conspiracy beyond a reasonable doubt. On October 14, 2010, Cabrera filed a notice of appeal.

**II.**

"We review de novo the denial of a motion for acquittal based on sufficiency of the evidence." *United States v. Blanchard*, 618 F.3d 562, 574 (6th Cir. 2010). However, "a defendant claiming insufficiency of the evidence bears a very heavy burden." *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006) (internal quotation marks omitted). We must affirm the district court's decision if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "We may not 'weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury.'" *United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010) (quoting *United States v. M/G. Transp. Servs., Inc.*, 173 F.3d 584, 588-89 (6th Cir. 1999)).

"In order to sustain a conviction for conspiracy under 21 U.S.C. § 846, the government must have proved (1) an agreement to violate drug laws, in this case [21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)]; (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy." *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005). "The government may meet its burden of proof on a conspiracy charge through circumstantial evidence." *United States v. Sliwo*, 620 F.3d 630, 633 (6th Cir. 2010) (internal quotation marks and alteration omitted). In the case of a drug conspiracy, "[a] buyer-seller relationship with others is not enough, but evidence of a conspiracy or evidence linking a particular defendant to a conspiracy may be provided by: repeated sales; further evidence indicating knowledge of and participation in the conspiracy; *or* evidence of a large quantity of drugs." *Graham*, 622 F.3d at 449-50 (citations and internal quotation marks omitted).

The government presented ample evidence to support the jury's guilty verdict. Sisk and Williams testified that Sisk purchased cocaine for Williams from Cabrera on a weekly basis over a period of several months. This was corroborated by recordings of intercepted phone calls between Sisk and Williams in which they discussed drug purchases and phone calls between Williams and his customers in which Williams alluded to buying cocaine from Cabrera. Furthermore, law enforcement officers confirmed the relationship between Sisk and Cabrera through surveillance of their meeting at Wal-Mart. Even though the officers did not recover drugs when they stopped Cabrera's truck, they found thousands of dollars in cash, consistent with Sisk's testimony that he sometimes gave Cabrera money for drugs, which he picked up later. Sisk and Evans testified that they personally observed Cabrera with large quantities of cocaine on other occasions. Although

7

Cabrera denied selling drugs and offered innocent explanations for his frequent contact with Sisk, his trip to Mexico, and the cash found on his nephew during the traffic stop, the jury was free to credit the testimony of the government's witnesses over Cabrera's testimony.

Cabrera attacks the credibility of the cooperating witnesses, referring to them as "'jailhouse' witnesses whose testimony had been purchased by the government." He also assails the credibility of the law enforcement officers, claiming that their testimony was "self-serving" and "cannot be trusted." However, "[w]e may not rule on a challenge to witness credibility in reviewing the denial of a motion for acquittal because doing so 'would invade the province of the jury as the sole finder of fact in a jury trial.'" *Graham*, 622 F.3d at 449 (quoting *United States v. Bearden*, 274 F.3d 1031, 1039 (6th Cir. 2001)). "'Attacks on witness credibility are simple challenges to the quality of the government's evidence and not the sufficiency of the evidence.'" *United States v. Conatser*, 514 F.3d 508, 519 (6th Cir. 2008) (quoting *United States v. Sanchez*, 928 F.2d 1450, 1457 (6th Cir. 1991)). Therefore, we decline to conclude that the government witnesses were unreliable, as Cabrera urges, and instead we "'draw all available inferences and resolve all issues of credibility in favor of the jury's verdict.'" *United States v. Jackson*, 470 F.3d 299, 309 (6th Cir. 2006) (quoting *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir. 2001)).

Cabrera also contends that the cooperating witnesses' testimony was not independently corroborated. The intercepted telephone calls and law enforcement surveillance *did* corroborate Sisk's and Williams's testimony, but even if they did not, "'it is well-settled that uncorroborated testimony of an accomplice may support a conviction in federal court.'" *Graham*, 622 F.3d at 448 (quoting *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999)). Cabrera suggests that some

facts that the government argued were incriminating were innocently explained, such as the phone calls between Cabrera and Sisk and the money found on Cabrera's nephew during the traffic stop. However, as Cabrera concedes, "circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not 'remove every reasonable hypothesis except that of guilt.'" *United States v. Ellzey*, 874 F.2d 324, 328 (6th Cir. 1989) (quoting *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984)). Finally, Cabrera argues that he does not fit the profile of a drug dealer and that no "baggies, drugs or scales" were ever recovered from him. The fact that physical evidence was not recovered from Cabrera is of no consequence, as "physical evidence is not required to sustain a conviction." *United States v. Henderson*, 626 F.3d 326, 341 (6th Cir. 2010).

**III.**

In sum, the government presented ample evidence to support the jury's verdict that Cabrera is guilty of conspiracy to distribute and possess with intent to distribute five hundred or more grams of cocaine. We affirm Cabrera's conviction and the district court's denial of Cabrera's motion for judgment of acquittal.