**NOT RECOMMENDED FOR PUBLICATION**
File Name: 18a0550n.06

**Nos. 17-3699, 17-3714, 17-3718**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Nov 01, 2018<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| CHRISTOPHER FITZGERALD (No. 17-3699); | ) | NORTHERN DISTRICT OF |
| CHIQUITA ANDERSON (No. 17-3714); | ) | OHIO |
| RASHARD SMITH (No. 17-3718), | ) | |
| | ) | OPINION |
| Defendants-Appellants. | ) | |

---

**BEFORE:** GUY, WHITE, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** A jury found Christopher Fitzgerald, Chiquita Anderson, and Rashard Smith guilty of conspiracy to distribute cocaine through Fitzgerald's and Smith's employer, Federal Express (FedEx), and for using a telephone to facilitate the commission of the conspiracy. Fitzgerald was also convicted of distributing cocaine, and Anderson was convicted of managing a drug premises. On appeal, Fitzgerald challenges the search warrant executed on his residence, the sufficiency of the evidence for his conspiracy and distribution convictions, the district court's determination of drug quantity involved in the conspiracy, the obstruction of justice enhancement to his sentence, and the reasonableness of his sentence. Anderson similarly challenges the sufficiency of the evidence for her three convictions, the court's determination of drug quantity, and the reasonableness of her sentence. Smith solely challenges

the court's determination of drug quantity for his sentence. We conclude that while the search warrant did not establish probable cause to search Fitzgerald's residence, the good-faith exception rescues the search. We further find that the jury had sufficient evidence to convict Fitzgerald and Anderson and that the district court committed no errors in sentencing. Accordingly, we **AFFIRM** the district court's denial of Fitzgerald's motion to suppress, **AFFIRM** defendants' convictions, and **AFFIRM** defendants' sentences.

## I.   BACKGROUND

### A.  The Conspiracy

The charges against defendants Fitzgerald, Anderson, and Smith arose from a complex year-long investigation of Walter Walker, a suspected drug trafficker with prior drug convictions, by the Northern Ohio Law Enforcement Task Force (NOLETF), a joint federal, state, and local task force. NOLETF linked Fitzgerald to Walker on April 7, 2014, when police responded to an emergency call by a man who attempted suicide in an apartment in Aurora, Ohio. The apartment was leased to Fitzgerald, who subleased it to Walker; the man who attempted suicide was Walker's cousin and admitted to helping Walker traffic drugs. Upon entering the apartment after the emergency call, officers observed items consistent with drug trafficking, such as suitcases with the backing cut open, vacuum-sealer bags, wrappings with white residue on them, and wrappings smeared with mustard, a technique believed to be used to thwart drug-sniffing dogs. During a subsequent narcotics search of the Aurora apartment, many of the drug-related items were missing. Officers suspected that Fitzgerald and Walker, who were at the apartment building between the initial search and the narcotics search, had removed the items

For the next year, NOLETF officers used physical and video surveillance, tracking devices on vehicles, toll data on telephones, and authorized wiretaps on Walker's and Fitzgerald's cell

phones to gather information about potential drug trafficking. NOLETF also used a confidential informant, known as CS#5. In May 2015, the informant, who claimed to speak frequently with Anderson, Fitzgerald's half-sister, told officers that Fitzgerald and Walker used FedEx to ship large quantities of cocaine and marijuana to the Cleveland area and that Anderson helped pick up drug shipments from Fitzgerald. The informant repeatedly provided information about Walker, Fitzgerald, and Anderson, as officers monitored coded cell phone conversations between the suspects that allegedly alluded to drug deliveries, but neither the informant nor the officers observed any drug transactions or seized any contraband between April 2014 and April 2015.

Details regarding a conspiracy emerged after Walker turned himself in to authorities in April 2015. Walker testified in Fitzgerald, Smith, and Anderson's federal trial in April 2016, as follows. Since approximately 2010, Fitzgerald had used his position as a FedEx delivery driver to help Walker deliver drugs to the Cleveland area—first, marijuana from Arizona and later, cocaine from California. Each cocaine shipment contained between one and two kilograms of cocaine, though Walker also mentioned at least five "dry runs" that did not contain drugs. Shipments were consistent, as frequent as once per week. After receiving the FedEx packages, Walker stored drugs and money at Anderson's house, where he divided the drug shipments into smaller quantities for distribution. Walker also asked Anderson to drive behind his car when he was delivering drugs to help him avoid detection by police. By 2013, Fitzgerald had recruited his coworker Smith to deliver packages of drugs on his weekday delivery route, while Fitzgerald handled Saturday deliveries. On several occasions, Fitzgerald also helped Walker transport money to California by concealing cash in the lining of suitcases.

Fitzgerald, drawing on his 18 years as a FedEx driver, suggested methods for Walker's shipments to evade detection by authorities. He advised Walker to create a business account under

a false name with an address located in a state not known as a "source" state for drugs. Walker testified he made three or four accounts to send packages from California. The investigation specifically identified one of Walker's accounts under the name Elizabeth Pankratz of Praxair Medical Supplies, a fictional company based in North Dakota, which sent 38 packages between April 2014 and April 2015. Fitzgerald also recommended shipping to businesses such as hospitals and using hard black cases by the brand Pelican to ship the drugs, as investigators were less likely to attempt to open a locked case. When he required more detailed tracking information about packages, Fitzgerald paid another FedEx employee, Shannon Grzybowski, to pull that information for him and, on two occasions, put Pelican cases on hold for him or Smith to pick up and deliver.

Walker testified that he met with Fitzgerald on January 31, 2015, to pick up a cocaine shipment and that he then went to Anderson's residence to break down the drugs, calling Anderson's cell phone to let her know he arrived. Based on evidence provided by the Government, NOLETF officers attempted to witness the January 31 delivery after intercepting several phone calls between Walker and Fitzgerald discussing possible meeting places. Though officers did not observe the delivery, the tracking device on Walker's car showed him near one of the agreed-upon spots on Fitzgerald's delivery route at the delivery time. An officer testified that the tracker showed Walker's vehicle then went immediately to Anderson's address, and officers watched Walker leave the residence. In subsequent months, video surveillance of Anderson's residence showed Walker entering with Pelican cases and giving Anderson what an officer believed was money, and Anderson leaving the residence to follow Walker in her car. At trial, Fitzgerald denied on the stand that he met Walker on January 31.

Walker testified that he initially paid Fitzgerald $50 per pound of marijuana delivered and between $2,000 and $2,500 per shipment of cocaine. Fitzgerald then paid Smith, though Walker

claimed he also dealt with Smith directly over five times. Walker periodically paid Anderson $1,000 for the use of her home and her assistance as a lookout. Fitzgerald used some of his earnings to buy and manage bars and clubs where Anderson also worked. By the time Walker turned himself in, he owed Fitzgerald and Smith between $20,000, according to Walker, and $31,000, according to Fitzgerald.

**B. Search Warrant for Fitzgerald's Residence**

On April 9, 2015, NOLETF detectives applied for and received search warrants for Fitzgerald's residence, Fitzgerald's storage locker, Anderson's residence, two locations where Walker resided, and Walker's storage locker. The 62-page affidavit in support of the search warrant on Fitzgerald's residence in Beachwood, Ohio primarily describes confidential informant CS#5's statements, locations tracked for Walker's vehicle, and transcripts of wiretapped phone conversations between Walker, Fitzgerald, and Anderson. The first four pages stated the affiant John Guzik's qualifications as a narcotics detective and provided standard information regarding drug crimes. The Beachwood address is only mentioned six times, primarily establishing it as Fitzgerald's residence.

When executing the search warrants, officers did not find drugs but did find Pelican cases, cash, burner phones, suitcases, and money counters at Walker's residences, as well as scales and Pelican cases at Anderson's residence. At Fitzgerald's residence, officers seized Pelican cases, suitcases with cut-out backs, and over $20,000 in cash, all of which Fitzgerald later sought to suppress.

### C. Trial and Sentencing

After the searches, Walker turned himself in to authorities and agreed to plead guilty to conspiracy to possess with intent to distribute cocaine and to testify at Fitzgerald, Anderson, and Smith's trial in return for a possible sentence reduction. He received a sentence of 57 months.

On April 20, 2016, Fitzgerald, Anderson, and Smith were indicted on nine counts. Count One for all three defendants was conspiring to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841. Only Fitzgerald was charged with intent to distribute a specific quantity amount of cocaine—five kilograms or more. Fitzgerald was named in five additional counts: distributing cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count Two); using a communication facility (his employer, FedEx) to facilitate the conspiracy and distribution of cocaine in violation of 21 U.S.C. § 843(b) (Count Three); and using a communication facility (a telephone) on three separate occasions to facilitate the conspiracy in violation of 21 U.S.C. § 843(b) (Counts Five, Seven, and Nine). Anderson was named in two more counts: managing premises for the purpose of manufacturing, storing, distributing, and using cocaine in violation of 21 U.S.C. § 856(a)(2) (Count Four); and using a telephone to facilitate the conspiracy in violation of 21 U.S.C. § 843(b) (Count Six). Smith was named in one more count of using a telephone to facilitate the conspiracy in violation of 21 U.S.C. § 843(b) (Count Eight).

During seven days of trial, the Government presented testimony by Walker; Grzybowski, the FedEx employee who also pled guilty and testified as part of her plea agreement; a FedEx security specialist; a representative of an actually existing company named Praxair (not based in North Dakota); and numerous law enforcement officials from different agencies involved with the investigation. Fitzgerald testified; Anderson and Smith did not. Fitzgerald testified that his phone conversations intercepted by NOLETF involved Walker's attempted investments in Fitzgerald's

bars, not drug deliveries, and that Fitzgerald's work at the bars generated the extra cash he deposited each month, which he did not report in his tax returns. On cross examination, he denied meeting Walker on January 31, 2015. The jury returned verdicts of guilty on all counts for all defendants and a forfeiture verdict for Fitzgerald. The district court denied each defendant's oral motion for acquittal.

The court separately sentenced each defendant. The court found that Fitzgerald committed perjury when he denied he met Walker on January 31, 2015, meriting a two-level obstruction of justice enhancement. In calculating Fitzgerald's Guidelines range, the court found the conspiracy involved at least 38 kilograms of cocaine—one kilogram per ascertained shipment delivered by Fitzgerald, Smith, or Grzybowski—and determined Fitzgerald was involved in conspiring to distribute between 15 and 50 kilograms of cocaine. This resulted in a base offense level of 32. With no criminal history, a two-level enhancement for a leadership role in the offense, and a two-level enhancement for obstruction of justice for perjury, Fitzgerald's advisory Guidelines range was 188 to 235 months' imprisonment. After considering his personal characteristics and the circumstances of the offense, including the fact that Walker received a 57-month sentence, the court rejected Fitzgerald's request for a 10-year mandatory minimum sentence and imposed a sentence of 188 months' imprisonment for the conspiracy conviction, at the bottom end of the Guidelines range, and ran the lesser sentences for his other convictions concurrently.

The court next sentenced Smith based on the same drug quantity finding, setting a base offense level of 32, which, with no further adjustments and no criminal history, resulted in an advisory Guidelines range of 121 to 151 months' imprisonment. The court, considering the relevant factors and noting Smith's ability and willingness to secure employment, varied

downward on his sentence, imposing 70 months' imprisonment and running his other sentence concurrently.

For Anderson's sentencing, the court found that though all 38 known shipments of cocaine were within the scope of the conspiracy, the evidence did not show that each shipment was "reasonably foreseeable" to Anderson. The court indicated it was making a conservative estimate (based on evidence showing that Walker made at least three two-kilogram deliveries to Anderson's home and that Anderson knew the scale of the drug trafficking was large enough that Walker owed Fitzgerald as much as $31,000) to arrive at a quantity calculation between 5 and 15 kilograms of cocaine. Anderson's base offense level was 30; with a two-level enhancement for maintaining her residence as a drug premise and a criminal history of II, the advisory Guidelines range was 135 to 168 months' imprisonment. After considering the relevant factors and circumstances, including potential disparity with Walker's sentence, the court varied below the Guidelines range to impose a 108-month term of imprisonment, with her other sentences running concurrently.

All three defendants timely appealed.

## II. ANALYSIS

Fitzgerald presents the following issues on appeal: (1) the search warrant for his residence was not valid; (2) evidence of the conspiracy and of his one count of distribution was insufficient; (3) the court erred in sentencing by finding at least 15 kilograms of cocaine were involved in the conspiracy; (4) the court erred by enhancing Fitzgerald's sentence for obstruction of justice for perjury; and (5) his sentence is substantively unreasonable. Anderson argues that the evidence was insufficient to support her three convictions and that her sentence was substantively unreasonable. Smith challenges the district court's finding that at least 15 kilograms of cocaine were involved in the conspiracy.

**A. Search Warrant (Fitzgerald)**

We review de novo the legal conclusion that an affidavit supporting a search warrant was sufficient to show probable cause. *United States v. Brown*, 828 F.3d 375, 381 (6th Cir. 2016). "Given our de novo standard and the fact that our review focuses on the probable cause determination of the magistrate judge in issuing the search warrant, we owe the district court's conclusion no particular deference." *Id.* (citation and internal quotation marks omitted). When the district court denies a motion to suppress, we review all evidence in the light most favorable to the government. *United States v. Galloway*, 316 F.3d 624, 628 (6th Cir. 2003).

### 1. Probable Cause and the Nexus Requirement

The Fourth Amendment protects "[t]he right of the people to be secure . . . against unreasonable searches and seizures" and provides that search warrants require "probable cause . . . describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A magistrate judge reviewing a warrant application must make "a practical, common-sense decision" whether probable cause exists under the "totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 230, 238 (1983). To demonstrate probable cause, an affidavit must "contain facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (citation and internal quotation marks omitted); *see also Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978) ("The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought."). The search warrant affidavit must specifically show "a nexus between the place to be searched and the evidence sought." *United*

*States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998)).

Whether a search constitutes an unconstitutional, unreasonable intrusion into a defendant's home is a fact-intensive inquiry, and in this circuit, "[m]ultiple cases on the nexus requirement reveal our struggle to provide guidance for such a fact-bound legal determination." *Brown*, 828 F.3d at 382. However, some general trends have emerged in cases where a defendant's residence is searched for evidence of drug dealing.

First, a defendant's previous conviction for drug dealing is a factor frequently cited in support of a determination of probable cause to search that defendant's residence for evidence of drug dealing. We have acknowledged that "[i]n the case of drug dealers, evidence is likely to be found where the dealers live." *United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998) (citing *United States v. Lamon*, 930 F.2d 1183, 1188 (7th Cir. 1991)). However, we also maintain that "a defendant's status as a drug dealer, standing alone, does not give rise to a fair probability that drugs will be found in defendant's home." *United States v. Berry*, 565 F.3d 332, 339 (6th Cir. 2009) (citing *Frazier*, 423 F.3d at 533).

Therefore, whether or not a defendant has previous drug dealing convictions (Fitzgerald did not), an affidavit must provide evidence of recent or current drug activity, such as descriptions of controlled buys or informants' firsthand knowledge. *See id.* ("There is support for the proposition that status as a drug dealer plus observation of drug activity near defendant's home is sufficient to establish probable cause to search the home.") (citations omitted). In *Berry*, we determined that there was probable cause to search a defendant's residence where the defendant was a known drug dealer and was arrested outside the residence with drugs on his person and in his vehicle. *Id.* We also found probable cause in *United States v. Miggins* for a search warrant for

co-defendants' shared residence where one defendant had prior cocaine charges, that defendant had various aliases and the residence's address written on a note in his pocket, and both defendants were participants in a controlled delivery of cocaine and admitted to being gang members. 302 F.3d 384, 393–94 (6th Cir. 2002). We similarly held that an affidavit established probable cause where the affidavit stated that the defendant was likely a drug dealer, and, along with other corroborating evidence about his drug purchases, that officers had recorded 38 conversations between a reliable confidential informant and a middleman buying large quantities of drugs on the defendant's behalf. *United States v. Gunter*, 551 F.3d 472, 476–77, 480–82 (6th Cir. 2009).

Controlled buys of drugs at a defendant's residence have been especially critical in establishing a sufficient nexus between the residence and evidence sought by law enforcement. *See Jones*, 159 F.3d at 974–75 (finding a sufficient nexus to search the defendant's residence where a confidential informant made drug purchases from the defendant, was at the defendant's residence during monitored drug transactions, and observed the defendant in possession of cocaine); *United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011) (finding a sufficient nexus to search the defendant's residence where a confidential informant had "observed someone come out of [the defendant's] residence, engage in a drug transaction, and then return into the residence").

But a defendant's prior drug convictions and evidence of recent drug activity are not always sufficient to find probable cause to search a defendant's residence. In *United States v. White*, we affirmed the district court's determination of no probable cause to search a residence where the affidavit stated that the officers received an anonymous tip that the defendant sold drugs at that residence, officers conducted and recorded a controlled buy from the defendant in the driveway of the residence, a police dog alerted to the odor of narcotics in the defendant's vehicle, and the defendant had numerous prior drug possession convictions. 874 F.3d 490, 494–95 (6th Cir. 2017).

We have also held that an affidavit did not establish a defendant was a "known drug dealer" when it merely stated that he had recently been arrested in a suspected drug deal and had one decade-old drug conspiracy conviction. *Brown*, 828 F.3d at 378–80, 382–84. Without evidence of the defendant's involvement in an ongoing drug conspiracy and without any assertion that the defendant used his home to distribute or store drugs, a "more direct connection was required" to support a search warrant of Brown's residence. *Id.* at 383. A nexus to a defendant's residence does not exist, moreover, if controlled buys occurred at the defendant's prior residence, but not the one officers are seeking to search. *Frazier*, 423 F.3d at 532. Thus, an affidavit supporting a narcotics search warrant for a residence does not establish a nexus between a defendant's recent drug activity and his residence where the affiant did not provide direct knowledge that the defendant has either sold drugs or used that particular residence for selling drugs. *See, e.g.*, *United States v. Higgins*, 557 F.3d 381, 390 (6th Cir. 2009) (finding insufficient nexus where the affidavit provided "scant information" about a confidential informant's reliability and police had little corroborating evidence); *United States v. McPhearson*, 469 F.3d 518, 524–25 (6th Cir. 2006) (finding insufficient nexus where the affidavit merely stated that defendant was arrested with drugs on his person outside his residence); *Carpenter*, 360 F.3d at 593–95 (finding insufficient nexus when the affidavit stated police observed marijuana plants near a residence but did not provide further detail about the activities of the residents).

Fitzgerald asserts that the affidavit supporting the search warrant of his residence does not establish his status as a drug dealer or a proper nexus between his alleged drug activity and that address. The affidavit does not reference Fitzgerald's criminal history; in fact, he has no prior arrests, charges, or convictions. Nor does the affidavit assert that NOLETF officers or the confidential informant ever observed Fitzgerald in possession of drugs, delivering drugs, or

receiving drugs, despite a year of investigation. The affidavit also does not include any claims of firsthand knowledge that Fitzgerald was engaged in the purchase or sale of drugs.

Even if the affidavit had established Fitzgerald was a known drug dealer, in a year of listening to Fitzgerald's phone conversations, tracking Walker's location, and attempting to surveil a delivery between Walker and Fitzgerald, NOLETF officers did not observe any drug activity at or near Fitzgerald's residence. By contrast, officers conducted video surveillance of Anderson's residence and witnessed Walker and Anderson handing off a Pelican case at that location. The affidavit, though 62 pages long, mentions Fitzgerald's address in only six paragraphs, primarily to establish that Fitzgerald resided there. It contains only two potentially suspicious references to the residence, neither of which "present sufficient facts demonstrating why the police officer expects to find evidence in the residence rather than in some other place." *Brown*, 828 F.3d at 382. First, the affidavit discusses a tapped phone conversation in which Fitzgerald told Walker that he left an item at his home. The affiant believed the forgotten item was the burner phone Fitzgerald used to coordinate drug drop-offs with Walker. However, this oblique reference to the residence does not demonstrate that drug-related activity occurred there. *Cf. Jones*, 159 F.3d at 974–75; *Ellison*, 632 F.3d at 349. Second, the district court may have misinterpreted one assertion in the affidavit when the court denied Fitzgerald's motion to suppress. The affidavit states twice that on February 20, 2015, officers observed Fitzgerald leave his workplace at FedEx, enter his personal vehicle, drive to "several locations," enter and exit those locations, and drive back to his residence, where officers ceased surveillance. The court wrote that those paragraphs describe Fitzgerald returning to the address "after a suspected drug drop." (R. 49, PageID 255.) However, there is no information in the affidavit supporting the conclusion that a suspected drug drop took place on February 20, 2015 at any location.

Our precedent does not support the district court's conclusion that the affiant's "experience that evidence of drug activity can often be found at the drug dealer's residence, alone, is sufficient to establish a nexus to search the residence." (R. 49, PageID 259.) *See Frazier*, 423 F.3d at 533. It is not enough for the affiant to assert his knowledge that drug traffickers often use their homes as "stash houses." There must be a separate "substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found *at the place cited*." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991) (emphasis added). In each case cited by the district court in its denial of Fitzgerald's motion to suppress, the search warrant affidavit contained observable evidence of defendant's drug activity in addition to the affiant's experience with drug investigation. *See United States v. Goward*, 188 F. App'x 355 (6th Cir. 2006) (where defendants also participated in a controlled buy of narcotics and in other drug transactions); *Miggins*, 302 F.3d at 388, 394 (same); *United States v. Blair*, 214 F.3d 690, 696–98 (6th Cir. 2006) (where officers first executed a warrant for financial records in the residence of owners of a prostitution ring based on the affidavit of an IRS agent, observed drugs in plain view, then applied for a narcotics search warrant). Our precedent is summarized in *Frazier*, which held that *Miggins*, *Blair*, and other cases do not "support[] the proposition that the defendant's status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home." 423 F.3d at 533.

The affidavit does not assert that Fitzgerald had a criminal history, provide firsthand evidence that he ever delivered or sold drugs, or demonstrate that Fitzgerald's residence was used as a "stash house" or played any role in the alleged drug conspiracy, other than the single reference to Fitzgerald's secondary cell phone. A magistrate judge must have a "substantial basis" for finding probable cause exists, *Gates*, 462 U.S. at 238–39 (quoting *Jones v. United States*, 362 U.S.

257, 271 (1960), and we must remain mindful that "'[a]t the very core' of the Fourth Amendment 'stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" *Kyllo v. United States*, 533 U.S. 27, 31 (2001) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)). Accordingly, we hold that the nexus requirement was not satisfied, and probable cause did not exist to issue the search warrant for Fitzgerald's residence.

### 2. Good Faith Exception

The Government argues that even if the affidavit did not establish a sufficient nexus to Fitzgerald's residence, suppression of the evidence obtained in the search would be improper under the "good faith" exception established in *United States v. Leon*, 468 U.S. 897 (1984). The exclusionary rule precludes the use of evidence obtained in violation of the Fourth Amendment in criminal proceedings against the victim of the illegal search or seizure, *Illinois v. Krull*, 480 U.S. 340, 347 (1987), but if the evidence was "obtained in objectively reasonable reliance" on the invalidated search warrant, it should not be suppressed, *Leon*, 468 U.S. at 922.

The *Leon* good faith exception specifies that the affidavit must contain only a "minimally sufficient nexus between the illegal activity and the place to be searched . . . ." *Carpenter*, 360 F.3d at 596; *see also McPhearson*, 469 F.3d at 526–27. That is a "less demanding showing than the 'substantial basis' threshold required to prove the existence of probable cause." *Frazier*, 423 F.3d at 536 (citing *Carpenter*, 360 F.3d at 595). An officer relying on a search warrant does not act in objectively reasonable good faith when: (1) the magistrate was misled by information in the affidavit that the affiant either knew was false or was reckless as to its falsity; (2) the magistrate wholly abandoned her judicial role; (3) the warrant was so lacking in indicia of probable cause that official belief in its existence is unreasonable; or (4) the officer's reliance on the warrant was otherwise not in good faith or objectively unreasonable, such as where the warrant is facially

deficient. *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (citing *Leon*, 468 U.S. at 914–23). The affidavit cannot be "bare bones" and merely "state[] suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *McPhearson*, 469 F.3d at 526 (citing *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996)). "The relevant question is whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. McCraven*, 401 F.3d 693, 698 (6th Cir. 2005) (citation and internal quotation marks omitted). Lack of good faith reliance on the affidavit may also exist "when evidence in the affidavit connecting the crime to the residence is 'so vague as to be conclusory or meaningless.'" *Frazier*, 423 F.3d at 536 (quoting *Carpenter*, 360 F.3d at 596). The standard of reasonableness is an objective one and "does not turn on the subjective good faith of individual officers." *Krull*, 480 U.S. at 355 (citing *Leon*, 468 U.S. at 919 n.20).

Though the affidavit supporting the search warrant for Fitzgerald's residence did not provide a sufficient nexus between the place to be searched and the items sought, it was not a bare-bones affidavit. The affidavit thoroughly described a year-long investigation into a wide-ranging drug conspiracy. We found an officer could not reasonably rely on a "bare bones" search warrant affidavit in *Laughton*, where the four-paragraph affidavit solely described one informant's controlled buy from the defendant, 409 F.3d at 748–51, and in *Weaver*, where the officer did not attempt to corroborate an informant's tip and the affidavit had "little firsthand information and no personal observations" of the defendant, 99 F.3d at 1380. Similarly, when an affidavit alleged merely that a defendant had drugs on his person when he was arrested outside his home, we found that an officer could not reasonably believe there was probable cause to search the residence for evidence of drug dealing on that arrest alone. *McPhearson*, 469 F.3d at 526–27. In contrast, here,

the 62-page affidavit contains evidence of Fitzgerald's involvement in ongoing drug activity based on confidential informant reports and a year of wiretapped conversations and other surveillance of suspected co-conspirators. For example, the confidential informant claimed to speak regularly with Fitzgerald's half-sister, co-defendant Anderson, about the conspiracy and specifically described Fitzgerald's role as the FedEx deliverer. Magistrate judges authorized wiretaps on Fitzgerald's and Walker's cell phones and a tracker on Walker's vehicle. Experienced officers interpreted the suspects' cryptic phone and text conversations to refer to drug deliveries and payments. On days tapped phone calls led officers to believe Fitzgerald and Walker planned to meet, surveillance of Anderson's residence showed Walker arriving with Pelican cases.

There is, moreover, no evidence in the record that officers did not rely on this warrant in good faith or that they applied for the warrant knowing the information within it was false. Similarly, we have no evidence that the magistrate "wholly abandoned [her] judicial role." *Leon*, 468 U.S. at 923. The warrant is not "so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable." *Laughton*, 409 F.3d at 748. In light of the entire record, we do not find it objectively unreasonable for an officer to believe that the affidavit established probable cause to search Fitzgerald's residence. We therefore conclude that the good faith exception applies and affirm the district court's denial of Fitzgerald's motion to suppress.

## B. Sufficiency of the Evidence (Fitzgerald and Anderson)

"We review de novo the district court's denial of a motion for acquittal based on sufficiency of the evidence." *United States v. Blanchard*, 618 F.3d 562, 574 (6th Cir. 2010) (citation omitted). When reviewing an insufficient evidence claim on appeal from a jury verdict, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States*

*v. Washington*, 715 F.3d 975, 979 (6th Cir. 2013) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Circumstantial evidence alone is sufficient to sustain a conviction[,] and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Barnett*, 398 F.3d 516, 522 (6th Cir. 2005) (quoting *United States v. Spearman*, 186 F.3d 743, 745 (6th Cir. 1999). Moreover, "we do not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury." *United States v. Wright*, 16 F.3d 1429, 1440 (6th Cir. 1994). A defendant bears "a very heavy burden" to show the government's evidence is insufficient. *United States v. Kernell*, 667 F.3d 746, 756 (6th Cir. 2012) (quoting *United States v. Jones*, 641 F.3d 706, 710 (6th Cir. 2011).

### 1. Fitzgerald

Fitzgerald challenges the sufficiency of the evidence for two convictions: Count One, conspiring to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841 (b)(1)(a); and Count Two, knowingly and intentionally distributing approximately one kilogram of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).

#### a. Conspiracy

"To sustain a conviction for conspiracy under 21 U.S.C. § 846, the government must have proved: (1) an agreement to violate drug laws, in this case 21 U.S.C. § 841; (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy." *United States v. Sliwo*, 620 F.3d 630, 633 (6th Cir. 2010) (citation omitted). An agreement can be established through circumstantial evidence or a "tacit or material understanding among parties to a conspiracy." *United States v. Beals*, 698 F.3d 248, 259 (6th Cir. 2012). "Testimony by co-conspirators alone can be sufficient to prove the existence of a conspiracy." *United States v. Soto*, 794 F.3d 635, 658

(6th Cir. 2015) (citation omitted); *see also Spearman*, 186 F.3d at 746. But a co-conspirator's statements about a defendant "should be viewed with 'special suspicion'" due to the co-conspirator's motivations. *United States v. Hunt*, 487 F.3d 347, 352 (6th Cir. 2007) (quoting *United States v. Gomez-Lemos*, 939 F.2d 326, 330 (6th Cir.1991)). The finder of fact should not draw unreasonable inferences, *United States v. Abner*, 35 F.3d 251, 255 (6th Cir. 1994), and should recall the Supreme Court's "long-standing admonition that 'charges of conspiracy are not to be made out by piling inference upon inference . . . .'" *United States v. Swafford*, 512 F.3d 833, 843 (6th Cir. 2008) (quoting *Direct Sales Co. v. United States*, 319 U.S. 703, 711 (1943)). Ultimately, "[a]ttacks on witness credibility are simple challenges to the quality of the government's evidence and not the sufficiency of the evidence." *United States v. Sanchez*, 928 F.2d 1450, 1457 (6th Cir. 1991), (quoting *United States v. Adamo*, 742 F.2d 927, 932 (6th Cir. 1984)), *abrogated on other grounds by Buford v. United States*, 532 U.S. 59 (2001).

Fitzgerald argues that Walker's self-interested statements about the defendants' roles in the conspiracy are unreliable, and he challenges the sufficiency of the circumstantial evidence corroborating Walker's testimony, particularly the lack of proof that Fitzgerald knew the FedEx shipments contained cocaine. While Fitzgerald is correct that authorities never seized any drugs, witnessed hand-to-hand sales, or obtained an admission from Fitzgerald, Walker's testimony is sufficient to support Fitzgerald's conviction. *See Soto*, 794 F.3d at 658. Walker testified that when he first approached Fitzgerald about shipping marijuana through FedEx, Fitzgerald willingly helped Walker use the best methods to label and package the shipments to evade detection, such as by using a return address based in a state not known as a drug-source state. According to Walker, when he lost his source of marijuana in Arizona, he told Fitzgerald he was "going to start playing with the other work" and began paying Fitzgerald $2,000 per case delivered, a significant

change from his previous payment of $50 per pound of marijuana. Walker also testified that Fitzgerald helped him remove cocaine-trafficking paraphernalia from the apartment leased in Fitzgerald's name in Aurora, Ohio where Walker's cousin attempted suicide. Finally, Walker claimed that he sent shipments nearly every week for at least one year, usually containing one to two kilograms of cocaine per case, and that he still owed Fitzgerald tens of thousands of dollars. That testimony permits the inference that Fitzgerald knew at least five kilograms of cocaine were involved in the conspiracy.

Moreover, at trial, the jury saw substantial corroborating evidence. First, a FedEx security investigator and NOLETF officers presented FedEx records for a business account under the false name Elizabeth Pankratz, of the fictional North Dakota company Praxair Medical Supplies. That business account sent 38 packages from FedEx stores in Southern California to various locations in Northern Ohio, matching Walker's testimony that he created and used the Elizabeth Pankratz account to send packages from his cocaine suppliers in Los Angeles. Second, NOLETF's wiretapped conversations and vehicle-tracking information show Walker and Fitzgerald deciding where to meet to hand off drug shipments at times and locations corresponding to delivery times and locations in the FedEx records. Third, another FedEx employee, Grzybowski—a name and person Walker denied knowing—testified that Fitzgerald gave her a cell phone and paid her hundreds of dollars to run detailed scans of Walker's packages and, on two occasions, to pull packages before delivery. Fourth, the FedEx records showed that of the 38 known packages, Fitzgerald personally delivered seven packages, and various testimony showed that he paid Smith and Grzybowski to deliver or pull the remaining 31 packages. Finally, during the search of Fitzgerald's residence and storage locker, officers found Pelican cases, suitcases with torn backings, and over $20,000 in cash. Though Fitzgerald claims that the cash and his regular large

bank deposits were legally earned through his roles managing and owning bars, the Government "need not remove every reasonable hypothesis except that of guilt" to defeat a sufficiency-of-the-evidence challenge. *Barnett*, 398 F.3d at 522.

This testimony and evidence could lead a rational juror to conclude that Fitzgerald entered an agreement to ship drugs, participated in shipping drugs, knew those drugs were cocaine, and knew that he was shipping at least five kilograms of cocaine during the conspiracy. Thus, sufficient evidence established an agreement to violate drug laws, knowledge and intent to join the conspiracy, and participation in the conspiracy. *See Sliwo*, 620 F.3d at 633. We affirm Fitzgerald's conviction on Count One.

### b. *Cocaine Distribution*

To convict for cocaine distribution under 21 U.S.C. § 841(a), the government must prove that a defendant: (1) knowingly or intentionally distributed cocaine, and (2) at the time of such distribution, the defendant knew that the substance was cocaine. *United States v. Colon*, 268 F.3d 367, 376 (6th Cir. 2001).

Fitzgerald attacks his distribution conviction on the same grounds as the conspiracy conviction, claiming Walker was not a credible source and the Government did not adequately corroborate Walker's testimony. Again, his challenge fails because "the quality of the evidence is a factual matter for the jury to evaluate." *United States v. Gibbs*, 182 F.3d 408, 424 (6th Cir. 1999). Walker testified that on January 31, 2015, Fitzgerald gave him one Pelican case containing one to two kilograms of cocaine. Evidence shows Fitzgerald knew that the shipments contained cocaine, not marijuana. Walker also helped decode his recorded phone conversations and texts with Fitzgerald discussing where to meet that day along Fitzgerald's delivery route. Though police did not witness the transaction, FedEx records show Fitzgerald delivered a package from the

Elizabeth Pankratz account that morning, and location tracking of Walker's vehicle shows Walker driving to the agreed-upon spot at the time of package delivery. The evidence in the record is sufficient for a rational juror to conclude that Fitzgerald knowingly distributed a substance he knew to be cocaine. We affirm Fitzgerald's conviction on Count Two.

2. Anderson

Anderson argues that insufficient evidence supported each of her three convictions: Count One, conspiring to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841 (b)(1)(a); Count Four, managing premises for the purpose of manufacturing, storing, distributing, and using cocaine in violation of 21 U.S.C. § 856(a)(2); and Count Six, using a telephone to facilitate the conspiracy in violation of 21 U.S.C. § 843(b).

*a. Conspiracy*

Anderson, like Fitzgerald, bases her challenge on Walker's reliability, but that is a factual and credibility determination entrusted to the jury. *See Washington*, 715 F.3d at 981. Anderson argues that no cocaine or money was found through surveillance or search of her home, and circumstantial evidence is not enough to show she knowingly participated in a conspiracy to distribute cocaine. She is incorrect; circumstantial evidence can be enough. *See Barnett*, 398 F.3d at 522. Walker, moreover, testified that he brought cocaine to Anderson's house and concealed drugs and money there. Officers observed Walker entering Anderson's house with a Pelican case on three occasions. Walker also testified that Anderson would follow Walker in her car to help keep law enforcement officers from pulling Walker over with drugs in his car. A search of Anderson's residence found Pelican cases and digital scales, corroborating Walker's account that he used Anderson's home to weigh and divide cocaine into smaller quantities. Tapped phone conversations also show Anderson knew Walker regularly used her residence and that he owed

Fitzgerald up to $31,000, a sum indicating the scope of the cocaine sales. The evidence is sufficient to show Anderson knew of the conspiracy, intended to join the conspiracy, and participated in the conspiracy. *See Sliwo*, 620 F.3d at 633. We affirm Anderson's conviction on Count One.

### b. *Maintaining Drug Premises*

To establish a violation of 21 U.S.C. § 856(a)(2), the government must prove that a defendant did "manage or control any place" and "knowingly and intentionally rent, lease, profit from, or make available for use, with or without compensation, the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance." 21 U.S.C. § 856(a)(2) (2012).

The Government presented evidence that Anderson owned and occupied the residence. Her $1,000 payments from Walker and recorded conversations with Fitzgerald and Walker indicate her knowledge that she was aiding the distribution of cocaine. Walker testified that he broke kilograms of cocaine into smaller quantities for distribution at Anderson's house, and the search of the residence found scales that could be used for weighing drugs. Sufficient evidence exists for Anderson's conviction under § 846(a)(2). *See United States v. Parrett*, 552 F. App'x 462, 464 (6th Cir. 2014). We therefore affirm Anderson's conviction on Count Four.

### c. *Using a Telephone to Facilitate a Federal Narcotics Crime*

A conviction under 21 U.S.C. § 843(b) requires the government to establish that the defendant "(1) knowingly and intentionally used a communications facility (2) to facilitate the commission of a [federal] narcotics crime." *United States v. Burns*, 298 F.3d 523, 538 (6th Cir. 2002) (internal citations omitted).

According to information obtained through NOLETF surveillance, Walker called Anderson at 9:26 a.m. on January 31, 2015. She picked up the phone, and he told her he was at

her house. Walker confirmed that on that date, he brought a Pelican case of cocaine to Anderson's house and divided the drugs into smaller quantities for distribution; the jury was entitled to find his testimony reliable. *See Sanchez*, 928 F.2d at 1457. Sufficient evidence thus existed in the record for the jury to find Anderson guilty of knowingly and intentionally using a communications facility to facilitate the drug conspiracy. We affirm Anderson's conviction on Count Six.

**C. Determination of Drug Quantity (Fitzgerald, Smith, and Anderson)**

Fitzgerald and Smith challenge the district court's finding for sentencing purposes that their roles in the conspiracy involved between 15 and 50 kilograms of cocaine. Anderson also challenges the district court's finding that her role in the conspiracy involved between 5 and 15 kilograms of cocaine.

We review a district court's factual finding of drug quantity for clear error. *United States v. Jeross*, 521 F.3d 562, 570 (6th Cir.2008).

1. Fitzgerald and Smith

Sentencing in drug crimes requires the district court to determine the quantity of drugs attributable to the defendant to establish a base offense level. USSG § 2D1.1(c). Under the Guidelines, when a defendant is part of a "jointly undertaken criminal activity" such as a drug conspiracy, "the defendant is accountable . . . for all quantities of contraband with which he was directly involved and . . . [that] were reasonably foreseeable in connection with that criminal activity." *Id*. § 1B1.3 comment. (n.3).

If the exact amount of drugs involved in a conviction cannot be determined, "an estimate will suffice, but . . . a preponderance of the evidence must support the estimate." *Jeross*, 521 F.3d at 570 (quoting *United States v. Walton*, 908 F.2d 1289, 1302 (6th Cir. 1990)). The estimate may be based on physical evidence or on testimonial evidence, *id.*; *United States v. Swanberg*, 370 F.3d

622, 625 (6th Cir. 2004), but that evidence "must have a minimal level of reliability beyond mere allegation," *United States v. Sandridge*, 385 F.3d 1032, 1037 (6th Cir. 2004) (quoting *United States v. Owusu*, 199 F.3d 329, 338 (6th Cir. 2000)). Corroborating evidence can provide an "indicia of reliability" to co-conspirator testimony. *Hunt*, 487 F.3d at 352 (citing USSG § 6A1.3(a)). In making its estimate, the court should "err on the side of caution," *Sandridge*, 385 F.3d at 1037 (quoting *Owusu*, 199 F.3d at 338), and must "conclude the defendant is more likely than not *actually* responsible for a quantity greater than or equal to the quantity for which the defendant is being held responsible," *Jeross*, 521 F.3d at 570 (quoting *Walton*, 908 F.2d at 1302).

The district court relied on Walker's testimony and the FedEx records to calculate the amount of drugs involved in the conspiracy. Walker testified that each package he shipped from California via FedEx usually contained two kilograms of cocaine, though he acknowledged he sent cases with no drugs in them. He claimed he sent the drug packages almost every week for at least a year from three or four different accounts, though only the Elizabeth Pankratz account was identified. The FedEx records for that account show that Walker sent 38 packages from California, all scanned by Fitzgerald, Smith, or Grzybowski. The court properly used caution by assuming each shipment contained one kilogram of cocaine, not two, therefore calculating that at least 38 kilograms of cocaine were shipped in the 38 containers. The resultant drug quantity for sentencing, between 15 and 50 kilograms of cocaine, is not clearly erroneous based on the testimonial and corroborating evidence in the record.

Fitzgerald claims that Walker used "puffery" and exaggerated the quantities of cocaine in each container. It is true that no FedEx security officers or law enforcement officers were able to seize a container and prove that the containers contained cocaine. The district court's determination of the credibility of a co-conspirator's testimony, however, receives "great

deference," *United States v. Esteppe*, 483 F.3d 447, 452 (6th Cir. 2007), and Walker's testimony and the FedEx records indicate Fitzgerald and Smith were involved in a conspiracy to ship more than 38 kilograms of cocaine. The district court need only estimate the quantity involved based on the "preponderance of the evidence." *Walton*, 908 F.2d at 1302 (6th Cir. 1990). In finding that at least 15 kilograms of cocaine were involved, the court did not commit clear error, and it did not err in calculating Fitzgerald's and Smith's Guidelines ranges accordingly.

### 2. Anderson

Anderson also challenges the district court's determination of the quantity of drugs attributable to her role in the conspiracy. The court found insufficient evidence that all 38 shipments were reasonably foreseeable to Anderson and looked instead at times when Walker brought cocaine shipments to Anderson's house. Walker's testimony and police surveillance described three such instances, and Walker testified that each case contained two kilograms of cocaine. This evidence is sufficient to show Walker brought at least six kilograms of cocaine to Walker's house. The court also noted that tapped phone conversations between Anderson and Fitzgerald indicate that she knew the conspiracy involved large sums of money and large quantities of drugs. Though the court agreed with the Government that Anderson could have reasonably foreseen that over fifteen kilograms of cocaine were involved in the conspiracy, the court instead elected to find that the drug quantity was five to fifteen kilograms. The calculation is not, as Anderson alleges, "arbitrary and unreasonable." We do not find clear error.

### D. Obstruction of Justice (Fitzgerald)

We review a district court's decision to impose an obstruction of justice adjustment under Guideline § 3C1.1 in three steps: (1) reviewing the district court's factual findings for clear error; (2) reviewing the district court's conclusion that a given set of facts constitutes obstruction of

justice de novo as a mixed question of law and fact; and (3) reviewing the two-level mandatory

adjustment for obstruction of justice de novo. *United States v. Middleton*, 246 F.3d 825, 846 (6th

Cir. 2001). "In reviewing the § 3C1.1 enhancement, we evaluate [the] defendant's testimony and

statements in a light most favorable to the defendant." *United States v. Thomas*, 272 F. App'x

479, 487 (6th Cir. 2008) (quoting *United States v. Head*, 927 F.2d 1361, 1372 (6th Cir. 1991)).

### 1. Obstruction of Justice

To impose an obstruction of justice enhancement for perjury, the district court must find

"that the defendant testified falsely 'concerning a material matter with the willful intent to provide

false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *United States

v. Chance*, 306 F.3d 356, 390 (6th Cir. 2002) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94

(1993)). The notes to the Guidelines provide that § 3C1.1 "is not intended to punish a defendant

for the exercise of a constitutional right" and that "not all inaccurate testimony or statements

necessarily reflect a willful attempt to obstruct justice." *United States v. Bazazpour*, 690 F.3d 796,

806 (6th Cir. 2012) (citing USSG § 3C1.1, comment. (n.2)). Thus, the court must identify "those

particular portions of the defendant's testimony that it considers to be perjurious," *United States

v. Mise*, 240 F.3d 527, 531 (6th Cir. 2001) (quoting *Dunnigan*, 507 U.S. at 94), and either make

specific findings as to each element of perjury or make a finding that "encompasses all of the

factual predicates for a finding of perjury." *Id.* (citation omitted).

The district court made each required finding by identifying a specific portion of

Fitzgerald's testimony as false and noting: "The testimony did go to a material matter that related

to Count 2 of the indictment. It was made under oath here in court. And the Court finds that there

was a willful intent to provide false testimony regarding the matter." (R. 160, PageID 2758–59.)

In the relevant testimony, Fitzgerald repeatedly denies meeting Walker on January 31, 2015, even

when the Government confronted Fitzgerald with phone calls between Fitzgerald and Walker planning a meeting and with Walker's testimony that they did meet to hand off a package of cocaine. While it would have been preferable for the district court to better describe why the perjurious portion of Fitzgerald's testimony was material and why the court believed his testimony was willful, the court did not clearly err in so finding. Fitzgerald's testimony contradicted his co-conspirator's testimony and corroborating evidence, and the record supports the finding that Fitzgerald committed perjury. We affirm Fitzgerald's two-level enhancement for obstruction of justice.

**E. Substantive Unreasonableness (Fitzgerald and Anderson)**

We review sentences imposed by a district court for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). A district court abuses its discretion if it imposes a sentence that is procedurally or substantively unreasonable. *United States v. Walters*, 775 F.3d 778, 781 (6th Cir. 2015); *United States v. Massey*, 663 F.3d 852, 856 (6th Cir. 2011).

1. Sentencing Disparity

A sentence is substantively unreasonable "when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Brinley*, 684 F.3d 629, 636 (6th Cir. 2012) (citation omitted). In reviewing for substantive reasonableness, this court evaluates "the totality of the circumstances, including the extent of any variance from the Guidelines range." *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007) (quoting *Gall*, 552 U.S. at 51). "A sentence that falls within a properly calculated guideline range is afforded a rebuttable presumption of reasonableness, and it is incumbent upon the defendant to

demonstrate that his sentence is unreasonable." *United States v. Evers*, 669 F.3d 645, 661 (6th

Cir. 2012) (quoting *United States v. Brogdon*, 503 F.3d 555, 559 (6th Cir. 2007)).

Under 18 U.S.C. § 3553(a)(6), the district court can consider "national disparities among

the many defendants with similar criminal backgrounds convicted of similar conduct," but the

court generally is not required to consider disparities between individual co-defendants' sentences.

*United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007). A district court, however, "*may*

exercise his or her discretion and determine a defendant's sentence in light of a co-defendant's

sentence." *Id.* at 624 (citing *United States v. Nelson*, 918 F.2d 1268, 1272–73 (6th Cir. 1990)).

While Walker was not a co-defendant in their trial, Fitzgerald and Anderson claim that

their sentences are substantively unreasonable because they are longer than that of Walker, the

leader of the conspiracy. In sentencing all three defendants, the district court used as its "starting

point and the initial benchmark" the correct calculation of the applicable Guidelines range, *Gall*,

552 U.S. at 49, then specifically addressed why Walker's sentence was shorter, at 57 months, than

either Fitzgerald's or Anderson's. The court noted that Walker received a three-level reduction

for acceptance of responsibility and additional reductions for cooperation, though he received a

leadership enhancement. Fitzgerald received two enhancements: one for obstruction of justice and

another for his supervisory role in the conspiracy. Anderson received one enhancement for

maintaining a drug premise. The court specifically emphasized each defendant's individual

culpability, particularly Fitzgerald's as the critical conspirator who provided access to FedEx and

permitted the conspiracy to go undetected for years. The court took each defendant's personal

characteristics and § 3553(a) factors into account and sentenced Anderson to a below-Guidelines

sentence of 108 months' imprisonment and Fitzgerald to a sentence at the bottom of the Guidelines

range of 188 months' imprisonment. Fitzgerald has not shown that his within-Guidelines sentence

is unreasonable or that the district court abused its discretion. The burden for Anderson to show unreasonableness is "even more demanding," as her sentence was below the properly calculated Guidelines range, *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008), and she likewise has not met it. While we acknowledge Fitzgerald's and Anderson's concerns regarding fairness and justice, we cannot conclude that their sentences are unreasonable. We therefore affirm Fitzgerald's and Anderson's sentences.

### III.    CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Fitzgerald's motion to suppress and **AFFIRM** each defendant's convictions and sentences.